ELLEN L. PARKINSON vs. BOARD OF ASSESSORS
OF MEDFIELD.

Suffolk. May 6, 1986. — July 17, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Real estate tax: abatement. *Real Property*, Conservation restriction.

A conservation restriction, created pursuant to statutory provisions, which
substantially restricted the development of certain land was not rendered
invalid by the landowner's reservation of the right to maintain on the
land "[o]ne single-family residence with usual appurtenant outbuildings
and structures," and the landowner was therefore entitled to an abatement
of real estate tax to reflect the value of the land as encumbered by the
restriction. [115-116]

APPEAL from a decision of the Appellate Tax Board.
Following its decision reported at 395 Mass. 643 (1985),
the Supreme Judicial Court granted a petition for rehearing.

*Casimir de Rham, Jr.* (*John A. Perkins* with him) for the
taxpayer.

*Charles Fuller, Jr.*, Town Counsel, for the defendant.

*James R. Milkey*, Assistant Attorney General, for the Attorney General & another, amici curiae.

*Gregor I. McGregor*, for The Trustees of Reservations &
others, amici curiae, submitted a brief.

HENNESSEY, C.J. This is an appeal from a decision of the
Appellate Tax Board (board), which affirmed the refusal of
the board of assessors of Medfield (assessors) to abate the tax
on real estate owned by Ellen L. Parkinson (taxpayer). The
assessors had declined to recognize as valid a conservation
restriction on the taxpayer's property which was the basis of
her applications for abatement. We affirmed the decision of
the board in *Parkinson* v. *Assessors of Medfield,* 395 Mass.
643 (1985). The taxpayer and the Attorney General, on behalf
of the Secretary of Environmental Affairs, then petitioned this
court for a rehearing pursuant to Mass. R. A. P. 27 (*a*), 365

Mass. 874 (1974).[1] We allowed the petition and reheard the case. A majority of the court conclude that the decision of the board is to be reversed and the abatements allowed.

The parties have stipulated to the following facts. The taxpayer owned and occupied premises at 303 Main Street, Medfield. The premises consisted of three taxable lots totaling 82.17 acres of land. The largest of these lots, comprising approximately seventy-seven acres, contained a single family dwelling with an attached two-car garage and detached barn.

By instrument dated June 16, 1980, the taxpayer granted a conservation restriction on all three parcels of land to The Trustees of Reservations, a Massachusetts charitable corporation. The purpose of the conservation restriction, as recited in the agreement, tracks the words of the controlling statute, G. L. c. 184, § 31 (1984 ed.): "the preservation of the Premises predominantly in their natural condition, the protection of environmental systems and scenic enjoyment."[2] Accordingly, the agreement prohibits the construction of buildings or other

---

[1] The Attorney General represented that conservation restrictions like the one here in issue are consistently recognized as valid, that many other existing conservation arrangements are legally affected by the decision in this case, and that the result here is important to the cause of environmental conservation. This information was not presented to the court at any time before the petition for rehearing was filed.

The taxpayer's arguments as to the validity of the restriction are supported by sixteen charitable corporations who have joined in an amici brief which has been filed with the court on rehearing.

[2] General Laws c. 184, § 31, provides: "A conservation restriction means a right . . . in any deed . . . executed by . . . the owner of the land . . . appropriate to retaining land . . . predominantly in [its] . . . natural, scenic or open condition . . . or to forbid or limit any or all (a) construction or placing of buildings, roads, signs, billboards or other . . . structures on or above the ground, (b) dumping or placing of soil or other substance or material as landfill, or dumping or placing of trash, waste or unsightly or offensive materials, (c) removal or destruction of trees, shrubs or other vegetation, (d) excavation, dredging or removal of loam, peat, gravel, soil, rock or other mineral substance in such manner as to affect the surface, (e) surface use except for agricultural, farming, forest or outdoor recreational purposes or purposes permitting the land or water area to remain predominantly in its natural condition, (f) activities detrimental to drainage, flood control, water conservation, erosion control or soil conservation, or (g) other acts or uses detrimental to such retention of land or water areas."

structures, the cutting, removing, or destroying of trees, as well as other specified acts of development by the occupant inconsistent with the purpose of the restriction. Notwithstanding these provisions, the conservation restriction reserves to the taxpayer the right to maintain "[o]ne single-family residence with usual appurtenant outbuildings and structures." This conservation restriction was approved by both the board of selectmen of Medfield and the Secretary of Environmental Affairs in accordance with G. L. c. 184, § 32 (1984 ed.), and was recorded in the Norfolk registry district of the Land Court on October 30, 1980.[3]

The board of assessors of Medfield assessed the taxpayer's real estate in fiscal 1982 and 1983 at $317,300 and $346,700, respectively. Although it was the policy of the assessors to discount the value of property subject to a conservation restriction, they refused to take into account the restriction on the taxpayer's property in making the assessment, because the restriction purported to apply not only to the taxpayer's land, but also to the taxpayer's residence and outbuildings. The taxpayer paid her taxes in full, and filed timely applications for abatements for both years. The assessors denied these applications, and the taxpayer appealed to the Appellate Tax Board.

At a hearing before the board, the taxpayer presented the expert testimony of a real estate appraiser who asserted that the value of the taxpayer's land, as encumbered by the restrictions on development, was $212,500. The assessors did not

---

[3] By instrument dated April 9, 1981, the taxpayer conveyed to The Trustees of Reservations all of her right, title and interest in the premises, reserving to herself a life estate and stating that the conveyance was subject to the conservation restriction granted in 1980. The assessors contend that the April, 1981, conveyance of a remainder interest to the trustees extinguished the conservation restriction under the common law doctrine of merger. Even assuming that common law principles of merger apply to statutory conservation restrictions (but see G. L. c. 184, § 32, allowing release of restriction only after public hearing and approval of town officials), an easement will not be extinguished at common law where an intervening life estate prevents complete unity of ownership in the dominant and servient estates. See 3 R. Powell, Real Property par. 425 (P. Rohan rev. ed. 1984); *York Realty, Inc.* v. *Williams,* 315 Mass. 287, 290 (1943).

contest this valuation, but disputed that a valid and enforceable conservation restriction existed on the taxpayer's property. The board agreed, concluding that G. L. c. 184, § 31, does not authorize a conservation restriction to be placed on dwellings and appurtenant buildings. The board thus affirmed the denial of the taxpayer's applications for abatement.

We conclude that the board erred in affirming the assessors' denial of real estate tax abatements on the taxpayer's property. The taxpayer's conservation restriction is valid because it meets all the requirements for a valid conservation restriction under G. L. c. 184, § 31. Because the conservation restriction was approved by the Medfield selectmen and the Secretary of Environmental Affairs, it is enforceable by the express terms of G. L. c. 184, § 32.

The restriction is designed to limit certain activities on the land in accordance with the express language of G. L. c. 184, § 31.[4] Although the restriction permits one single-family residence with appurtenant outbuildings and structures, such use of restricted land is not prohibited by the statutes. The statutory requirement is that the land be kept "predominantly" in its natural, scenic or open condition; and, significantly, the statute provides that a conservation restriction may "forbid or *limit*" building construction (emphasis added). G. L. c. 184, § 31. The board was in error in so far as it concluded that G. L. c. 184, § 31, does not authorize a conservation restriction on dwellings and appurtenant buildings.

---

[4] The conservation restriction granted by the taxpayer, by its terms (a) limits construction of any buildings on the Parkinson land to one single-family residence with usual appurtenant outbuildings and structures; (b) limits excavation or removal of soil, loam, peat or rock from the property, and the dumping of trash, waste or other substance on the property; (c) limits cutting, removal or destruction of trees or other vegetation on the property, while allowing the clearing and maintenance of trails, the carrying on of woodland and agricultural operations, the maintenance of horses and domestic animals and the use of the property for walking and horseback riding; and (d) prohibits the use of the property or any activity on the property which, in the reasonable opinion of The Trustees of Reservations, as grantee, is or might become inconsistent with the preservation of the property predominantly in its natural condition, the protection of environmental systems and scenic enjoyment.

General Laws c. 59, § 11 (1984 ed.), does not compel a contrary result. That section provides, in relevant part, that "real estate under a conservation restriction in perpetuity under section thirty-one of chapter one hundred and eighty-four subject to a written agreement with a city or town shall be assessed as a separate parcel." Where part of a taxpayer's property is encumbered by a conservation restriction, and part is not, G. L. c. 59, § 11, requires that the restricted and unrestricted portions be assessed separately. See *Moskow* v. *Commissioner of Envtl. Management,* 384 Mass. 530, 531 n.2 (1981) (wetland restriction). This provision, enacted by St. 1972, c. 719, § 1, allows a taxpayer to realize the tax benefits of placing a conservation restriction on only part of his land. Sicard, Pursuing Open Space Preservation: The Massachusetts Conservation Restriction, 4 Envtl. Affairs 481, 497 (1975). This section has no effect where, as in this case, the entire locus owned by the taxpayer is subject to the conservation restriction.

A majority of the court having concluded that the conservation restriction is valid, the remaining issue is the fair cash value of the taxpayer's land as encumbered by the restriction. G. L. c. 59, § 38 (1984 ed.). "[R]estrictions on the use of property may reduce its value below that which would be appropriate in the absence of such restrictions." *Mashpee Wampanoag Indian Tribal Council, Inc.* v. *Assessors of Mashpee,* 379 Mass. 420, 422 (1980), citing *Lodge* v. *Swampscott,* 216 Mass. 260, 263 (1913). The taxpayer's real estate appraiser testified that the three parcels of property, including buildings, were worth $212,500 as encumbered by the conservation restriction, because they could not be put to their highest and best use.[5] The assessors do not dispute that $212,500 is a fair valuation of the property, if the conservation restriction is presumed to be valid. The taxpayer has thus sustained her burden of proving overvaluation in the amount of $104,800 and $134,200 for fiscal years 1982 and 1983, respectively,

---

[5] The witness testified that he used the market data approach to value the taxpayer's home, although it was difficult to find comparable sales of houses on such restricted parcels of land.

and the case is remanded to the board for further proceedings not inconsistent with this opinion.

*So ordered.*