LAWRENCE GOLDMUNTZ vs. TOWN OF CHILMARK.

No. 94-P-1496.

Suffolk. May 15, 1995. - July 7, 1995.

Present: DREBEN, KASS, & IRELAND, JJ.

*Real Property*, Conservation restriction.

An in-ground swimming pool was a "structure[ ] on . . . the ground"
    within the meaning of that phrase as used in a certain conservation
    restriction and a judge of the Land Court correctly concluded that the
    construction of such a pool was prohibited on property subject to the
    restriction; further, the structure was not "accessory" to certain activi-
    ties allowed under the restriction as the activity (swimming) was not
    possible without the structure. [696-699]

CIVIL ACTION commenced in the Land Court Department
on October 8, 1993.

The case was heard by *Peter W. Kilborn*, J., on motions
for summary judgment.

*Richard W. Renehan* for the plaintiff.

*Miriam A. Widmann* for the defendant.

*Jeffrey M. Bernstein & Brendan T. O'Neill*, for Vineyard
Conservation Society, Inc., & another, amici curiae, submit-
ted a brief.

IRELAND, J. We are called on to determine whether a con-
servation restriction in perpetuity which burdens the plain-
tiff's land in Chilmark prevents him from installing an in-
ground swimming pool on the property. A Land Court judge
answered that question in the affirmative and the plaintiff
has appealed the resulting judgment. We affirm.

The restriction, key portions of which are reprinted as an
appendix to this opinion, was granted in 1976 by the prop-
erty's former owner, Katharine Irving Morgan, to the town
of Chilmark. Pursuant to G. L. c. 184, § 32, the restriction
was accepted by the selectmen and was approved by the Sec-

retary of Environmental Affairs. It is recorded with the Dukes County registry of deeds. The restriction is administered by the Chilmark conservation commission (the commission). By its terms, the restriction is binding on Morgan and her successors in title, including the plaintiff who (along with other members of his family as successive interest holders) acquired the property in 1987.[1]

In 1993, the plaintiff applied to the commission for permits to construct an in-ground swimming pool in an area near the existing dwelling on the property. Upon notification from the commission that construction of the pool would violate the restriction, the plaintiff filed an action in the Land Court for a declaratory judgment pursuant to G. L. c. 231A, naming the town as defendant. In ruling in the town's favor on cross motions for summary judgment, the judge relied in large part on § B, par. 1, of the restriction which prohibits "[c]onstruction or placing of buildings . . . *or other structures on* or above *the ground*." (Emphasis supplied.)

The judge ruled the proposed swimming pool was a "structure" within the meaning of § B, par. 1, and further ruled that the pool does not fall within the ambit of any of the restriction's limited exceptions allowing, for example, "improvement of the existing dwelling," § B, par. 6, subpar. d, and "accessory structures appropriate to [certain passive recreational] uses," § B, par. 6, subpar. e.

The grantor's stated purpose in creating the conservation restriction for the town's benefit was "to restrict the use of [the property] and retain it predominantly in its natural, scenic and open condition, in accordance with [G. L. c. 184, §§ 31-33]." The quoted language echoes that in § 31, par. 1. See also *Parkinson* v. *Assessors of Medfield*, 398 Mass. 112, 115 (1986). Indeed, the list of activities prohibited by § B, pars. 1-6, of the restriction is culled almost verbatim from § 31 of the statute. From this, and from the narrow

---

[1]The plaintiff holds a life estate in the property and Barbara Goldmuntz holds a successor life estate to the plaintiff's life estate. Ellen Goldmuntz and others are the remaindermen.

scope of the activities that are permitted on the property by § B, par. 6, subpars. a-f, the judge correctly concluded that the grantor "wanted a tight rein kept on changes to the [p]roperty." The judge also correctly characterized the proposed pool as a structure within the over-all meaning of the instrument, cf. *Scott* v. *Board of Appeal of Wellesley*, 356 Mass. 159 (1969) (in-ground swimming pool is a structure for purposes of town zoning by-law's set-back requirements), which would create a permanent physical presence "on . . . the ground."

The plaintiff's arguments, that were the pool to be connected or appended to the existing structure by a patio or wooden deck, it would be permitted under § B, par. 6, subpar. d, and that the proposed pool is an "accessory structure" under par. 6, subpar. e, which is incidental to the primary recreational use of swimming, have little merit. As support for the first argument, the plaintiff points out that, on two prior occasions, the commission allowed him to construct wooden decks that are appended to and are a part of the existing dwelling, upon the opinion of town counsel that the decks were "improvements" allowed under par. 6, subpar. d. The propriety of the commission's previous actions was not before the Land Court and is not before us. Suffice it to say that a swimming pool, unlike an attached deck, is an entirely separate structure which, even were it located next to, or even flush with, the existing dwelling, could not properly be regarded as an "improvement of the existing dwelling" envisioned in par. 6, subpar. d.

Paragraph 6, subpar. e, enumerates activities that may be carried out upon the "land . . . in its natural, scenic and open condition" (to quote once again from the document's statement of purpose), and it allows "the repair . . . and building of accessory structures appropriate to [such passive, recreational] uses" as "[f]ishing, shellfishing, boating, walking, horseback riding, bicycling, bird watching, nature observation" and so forth. Arguably, swimming in Squibnocket Pond on which the property abuts is such a passive use. By this interpretation, par. 6, subpar. e, might be construed to

allow for construction of a bathhouse as accessory to such passive use of the property. Such use would remain consistent with the clear thrust of § B, par. 5, of the restriction which forbids "surface use of the land, except for [those] purposes consistent with allowing the land and related areas to remain *predominantly* in their natural condition[.]" (Emphasis supplied.) Here, however, the plaintiff tortures the language and plain meaning of par. 6, subpar. e, by arguing that a swimming pool is somehow incidental and accessory to swimming in much the same way one might try to argue that a tennis court is incidental and accessory to tennis.[2] The structure cannot be "accessory" as the activity is not possible without the structure.

In addition to its social benefits, a conservation restriction yields an economic benefit to the grantor of the restriction and successor owners of the property. See, for example, *Parkinson* v. *Assessors of Medfield*, 398 Mass. at 115-116. In return for that benefit to the owner, it is reasonable that the conservation restriction be protected against expedient exemptions which defeat the purpose of preserving land in its natural state.

*Judgment affirmed.*

APPENDIX (with emphasis supplied).

*"CONSERVATION RESTRICTION*

"I, Katharine Irving Morgan of the Town of Amherst, County of Hampshire, Commonwealth of Massachusetts, grant, without covenants, to the Town of Chilmark, County of Dukes, Commonwealth of Massachusetts a conservation restriction in perpetuity on a parcel of land located in Chilmark, Massachusetts, in order *to restrict the use of such land and retain it predominantly in its natural, scenic and open condition, in accordance with the authority contained in the Conservation Restriction Act,* Massachusetts General Laws, ch. 184, sections 31 to 33. The restriction shall be administered by the Conservation Commission of the Town of

---

[2]Given the context in which it appears, the phrase "accessory structures" relates to a particular recreational use, not to the primary dwelling structure on the property.

Chilmark. The parcel covered by this restriction is bounded and described as follows:

[A description of the parcel follows.]
* * * *

"*Section B - Restrictions*

"The terms of the conservation restriction are as follows: that neither I nor my heirs, devisees, successors, assigns or grantees will conduct or perform or permit others to conduct or perform any of the following activities on or in respect of the above-described land, except as hereinafter specifically provided:

"1. *Construction or placing of* buildings, roads, signs, billboards or other advertising, utilities or *other structures on or above the ground*;

"2. Dumping or placing of soil, loam, peat, gravel, sand, rock or other substance or material as landfill, or dumping or placing of trash, waste or unsightly or offensive materials;

"3. Removal or destruction of trees, shrubs or other vegetation;

"4. Excavation, dredging or removal of loam, peat, gravel, soil, rock or other mineral substance in such a manner as to affect the surface;

"5. *Any surface use of the land, except for agricultural, farming, forest, outdoor recreational or other purposes consistent with allowing the land and related areas to remain predominantly in their natural condition*;

"6. Activities detrimental to drainage, flood control, water conservation, erosion control or soil conservation; provided, however, that notwithstanding anything contained in paragraphs 1 through 6 of this Section B, I reserve the right to conduct and perform and permit my heirs, devisees, successors, assigns and grantees to conduct and perform the following activities on or in respect of said land and improvements thereon:

    a. Construction and maintenance of blinds for nature observation and bird watching and facilities for docking, mooring and storing of boats;

    b. Cultivation and harvesting of crops, flowers, trees, shrubs and hay, fish and shellfish; raising and grazing of livestock; and construction and maintenance of fences, stone walls and small accessory buildings necessary therefor;

    c. Clearing of brooks and streams to permit the free flow of waters therein; selective cutting and pruning of trees, brush, and other vegetation to maintain their health and aesthetic qualities, to improve scenic views and implement disease prevention measures; and clearing, maintenance, repair and improvement of rights-of-way, trails, paths, and roads for walking, horseback riding, bicycling, bird watching, nature observation, and for providing ingress and egress to and from various points on the land.

    d. *Maintenance, repair and improvement of the existing dwelling and its appurtenant garage/study* and the replacement thereof, if totally or partially destroyed, *by structures which are consistent and in keeping with the natural scenic values and character of the land*; and maintenance, repair, alteration, improvement or

relocation of connected utilities, including electric, telephone, water, sewerage and drainage systems.

e. *Fishing, shellfishing, boating, walking, horse-back riding, bicycling, bird watching, nature observation, and other similar recreational uses and the repair, maintenance, improvement and building of accessory structures appropriate to said uses;*

f. All other lawful uses and activities on or in respect of the subject land consistent with the provisions of the conservation restriction granted hereunder as are permitted by the provisions of Massachusetts General Laws, Chapter 184, or any amendment thereof or any similar statute hereinafter enacted in lieu thereof.

* * * *

"*Section D.*

"This conservation restriction shall be binding upon and may be enforced against the grantor, her heirs, devisees, successors, grantees or assigns, by the Town of Chilmark and any successor holder of this conservation restriction.

* * * *

"[The instrument is dated December 17, 1976, and is signed and acknowledged by] Katharine Irving Morgan[,] Grantor."