CAROL ROSE BURRITT & others[1] *v.* JOSEPH D. LILLY, trustee,
& another.[2]

No. 93-P-1634.

Suffolk. November 9, 1995. - February 5, 1996.

Present: KASS, GILLERMAN, & FLANNERY, JJ.

*Deed*, Construction. *Real Property*, Deed, Conveyance, Easement. *Intent.*
*Practice, Civil*, Stipulation. *Easement.*

In an action in the Land Court, the judge incorrectly entered summary
judgment granting the plaintiffs an injunction prohibiting the defendant
from constructing a residence on a certain locus that he owned over
which the plaintiffs held an easement by reservation "to enjoy the
benefits" of the property, where, notwithstanding the stipulation of the
parties, there remained an issue of material fact with respect to the
intention of the grantor in conveying the property with the reservation.
[32]

CIVIL ACTION commenced in the Land Court Department
on October 21, 1991.

The case was heard by *Peter W. Kilborn*, J., on a motion
for summary judgment.

*Dennis M. Powers* for the defendants.

*Matthew E. Regan* for the plaintiffs.

GILLERMAN, J. The property known as Bass Rock is an
outcropping of 38,200 square feet of rock and ledge located at
the end of Bass Rock Lane in Marblehead (the locus). When
Robert W. Rose conveyed the locus to Morris Tobin by deed
dated April 12, 1971, and recorded on July 16, 1971, he
reserved for himself, his heirs, and assigns "the right to pass
and repass over said property, to fish from the rocks and gen-
erally to enjoy the benefits of said property in common with

---

[1]Stephen C. Burritt, Nancy Burritt Haney, Susan Rose Burritt, and Ar-
thur Ware Burritt.

[2]Richard Sokolow. Lilly is trustee of the JDL Realty Trust.

others." The deed recites that the conveyance is for nominal consideration.

The defendant Lilly is now the record owner of the locus; the defendant Sokolow is the grantee of an unrecorded deed of the locus from Lilly. The plaintiff Carol Rose Burritt is the daughter, and heir, of Robert W. Rose, and the remaining plaintiffs are the children of Burritt.

Sokolow seeks to construct a residence on the locus.[3] The plaintiffs, relying on the easement quoted above, claim that he has no right to do so and brought this action in the Land Court to enjoin any construction on the locus. The judge's decision states that the parties stipulated at the hearing that there was no genuine issue of any material fact, and the judge so found. He concluded that the plaintiffs were entitled to the injunction they sought, and he allowed their motion for summary judgment. We reverse and remand for further proceedings.

*Discussion.* The proposed residence is shown on a plan dated June 9, 1992. The plan shows that the residence would be above the soil line and would occupy a "footprint" of about 560 square feet. The plan also shows a concrete walk extending from the end of Bass Rock Lane across a portion of the locus to below the soil line, together with masonry stairs, both of which are designed to facilitate access to the locus for those having easement rights.

The judge made these findings about the locus:[4] "It is the end of a promontory, affording views of the ocean in three directions. Most of it is rock, which, even in its harbor location, must provide a satisfying surf at times. The part not rock is covered by sea-side vegetation. Locus is an unspoiled area which can provide pleasure, perhaps even delight, to the senses."

The judge concluded that these unspoiled areas jutting into

[3]The Marblehead planning board approved a site plan special permit for Sokolow's proposed house.

[4]The judge stated that in prior proceedings involving Bass Rock he had viewed the locus. Those proceedings involved the defendants but not the plaintiffs. We need not consider whether it was appropriate for the judge, in considering a motion for summary judgment, to include his impressions from the view, see *Berlandi v. Commonwealth*, 314 Mass. 424, 451 (1943) (information acquired on a view may be treated as evidence), for nothing turns on that fact.

the sea are the " 'benefits of said property' [referred to in the easement], and they would be materially interfered with by the proposed residence and its parking areas." The judge entered a final judgment which (i) adjudged that the easement set forth in the deed to Tobin "may [be] exercise[d]. . . over the entire area conveyed under said deed and said area shall be kept in its natural state" and (ii) enjoined the defendants from constructing the proposed residence on the locus, "and from otherwise disturbing the natural state of said area."

The judge's finding that there was no genuine issue as to any material fact apparently was based on his conclusion that the Tobin deed was "not ambiguous." However, the documents on file in the case include the affidavit of Richard Sokolow to which is attached a copy of a letter from Carol Rose Burritt to Tobin, dated May 18, 1976, five years after the date of the deed to Tobin. That letter states, "My father discussed the best solution for the land . . . [deeded to Tobin]. With my approval it was deeded to you by my father *for your use and not to be held for the family*"[5] (emphasis added).

The 1976 letter from Burritt to Tobin, which the judge ruled was not relevant because the Tobin deed was not ambiguous, as well as the underlying conversation between Burritt and Rose,[6] bear directly on the question of the intention of Rose at the time of the deed to Tobin. Given the position of the plaintiffs in this litigation — that Tobin's deed granted him, as owner, no more property rights than those Rose reserved to himself and his heirs and assigns, namely, the right to walk over the property, but not to alter its natural state — Rose's intention, viewed in the context of Burritt's 1976 letter to Tobin, is far from clear, and evidence is admissible "to elucidate its meaning in context." *Antonellis* v. *Northgate Constr. Corp.*, 362 Mass. 847, 851 (1973). See also *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753 (1973). Compare *Doody* v. *Spurr*, 315 Mass. 129, 133 (1943) (language of a grant should be construed in the light of attending circumstances that show the intention of the parties).

[5]There is also on file the affidavit of Carol Rose Burritt, dated October 25, 1991, which states that her father told her that "by deeding the property to Attorney Tobin he was guaranteeing that it would never be built upon."

[6]At the trial, the parties will be obliged to consider whether, or the extent to which, Burritt's conversations with her father are admissible. See G. L. c. 233, § 65, regarding declarations of deceased persons.

We conclude that there is a genuine issue as to a material fact — whether Rose intended his deed to a third party, Tobin, to be the means by which the natural state of the property would be preserved, as the plaintiffs claim, or whether the Tobin deed was intended to permit Tobin to make use of the locus, including construction upon it, while preserving the right of the heirs to go upon the property for the purpose of viewing and enjoying the ocean scene, as Sokolow claims. The issue of Rose's intention is critical to the outcome in this case. See *Ellis* v. *Wingate*, 338 Mass. 481, 485 (1959).

In these circumstances we hold that the stipulation of the parties was improvidently entered into and the judge should not have accepted the stipulation as binding upon him. See *Granby Heights Assn., Inc.* v. *Dean*, 38 Mass. App. Ct. 266, 269 (1995) (a court may vacate a stipulation made by the parties if it is deemed "improvident or not conducive to justice"), quoting from *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945) (an appellate court as well as the trial court may vacate an improvident stipulation).[7]

Because this case must be remanded to the Land Court, we offer certain guidelines, which the trial judge may find helpful.

The judge divided the easement into separate components (the right to pass and repass over said property; the right to fish from the rocks — as to which there is no dispute; and the right to enjoy the benefits of the property in common with others), analyzing each component separately. We disagree with this mode of analysis. The right to pass and repass over the property together with the right to enjoy the benefits of the property would seem to be united by a single intention of the grantor. Whatever was intended by the grant of the right to enjoy the benefits of the property, the right to pass and repass merely provided specific assurance that that right of

---

[7]Without denying or referring to the judge's statement that the parties stipulated that there was no genuine issue of a material fact, Sokolow, in this court, seeks a remand for trial on the merits, relying on the claim that the filed affidavits are directly contradictory as to Rose's intention in conveying the locus to Tobin. We are not unmindful of the rule that parties may not change the theory on which, by assent and with the approval of the judge, the case was tried. See *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978); *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990). Nevertheless, we conclude, for the reasons stated in the text, that this rule must yield to the need to consider the argument made on appeal.

enjoyment would be available without trespassing upon the property of another.

We also emphasize that what the plaintiffs seek in these proceedings is similar to a negative easement, that is, it resembles a covenant by Rose that the locus will not be built upon and will be kept in its natural state.[8] Such restrictions on use are not favored; they are limited in time to thirty years from the date of the deed. See G. L. c. 184, § 23.

Finally, we observe that the right to an injunction against the obstruction of an easement "is not an absolute one." *Perry* v. *Hewitt*, 314 Mass. 346, 350 (1943). It is important to consider whether the intrusion upon the easement is serious or substantial. *Ibid.* If, for example, the rights reserved by the easement are deemed to require, consistently with the intention of the grantor, merely enforceable assurances that access to those portions of the locus that afford the beneficiaries of the easement the enjoyment of "just watching the ocean from the area at the end of Bass Rock Lane," as described in Carol Rose Burritt's affidavit,[9] then it may be feasible to protect rights under the easement while not precluding *all* construction on the locus. See *Barchenski* v. *Pion*, 9 Mass. App. Ct. 896, 897 (1980) ("In dealing with the grant of an easement that is general in nature, a standard of reasonableness is applied to determine the extent of uses permitted for either the easement holder or the owner of the servient estate"). But these are matters for the judge's sound discretion, and we do not intimate any particular result.

The judgment is reversed, and the case is remanded to the Land Court for further proceedings.

*So ordered.*

---

[8]Illustrations of a negative easement may be found in *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 134 n.9 (1982). There is some authority that a negative easement is always an appurtenant easement — a condition that does not exist in this case. See 2 American Law of Property § 8.12, at 237 (Casner ed. 1952). Section 8.12 explains that the "interest protected by a negative easement is always an interest in the enjoyment of land possessed by the one entitled to the benefit of the easement."

[9]The affidavit states, "During the last several years I have come to Marblehead at least once each year and have gone on Bass Rock and have greatly enjoyed just watching the ocean from the area at the end of Bass Rock Lane. Those moments are very precious to me."