CHATHAM CONSERVATION FOUNDATION, INC. *vs.* JONATHAN
FARBER & another.[1]

No. 01-P-63.

Suffolk. June 18, 2002. - November 25, 2002.

Present: PERRETTA, PORADA, & CYPHER, JJ.

*Real Property,* Conservation restriction.

In an action for declaratory judgment to interpret and enforce a conservation
restriction on a parcel of land, in which the defendants, successors in inter-
est to grantors of the restriction, argued that inherent in their express right
to pass and repass along the restricted portion of their property was the
right to replace an existing walkway with an elevated walkway, the Land
Court judge erred in granting summary judgment in favor of the plaintiff,
where the grantors of the restriction did not need to reserve explicitly the
right to improve the existing walkway on the parcel in retaining the right
to pass and repass, and where the question whether the proposed elevated
walkway was a reasonable repair or improvement incidental to the right to
pass and repass turned on disputed issues of fact that could only be resolved
by a trial. [588-592]

CIVIL ACTION commenced in the Land Court Department on
October 9, 1998.

The case was heard by *Mark V. Green,* J., on a motion for
summary judgment.

*Peter S. Farber* for the defendants.

*Michael D. Ford* for the plaintiff.

CYPHER, J. Jonathan and Bonnie Farber (Farbers) appeal from
a judgment entered in the Land Court in favor of the Chatham
Conservation Foundation, Inc. (Foundation). In 1998, the
Foundation sought declaratory and injunctive relief in that court,
requesting that it interpret and enforce a conservation restriction
(restriction) on three parcels of land in Chatham. The Farbers,
successors in interest to the grantors of the restriction and the

---

[1] Bonnie Farber.

sole parties on appeal,[2] argue that inherent in their express right to "pass and repass" along the restricted portion of their property-is the right to replace an existing wooden plank walkway with an elevated walkway, which, in addition to providing safer passage, will be more environmentally beneficial to the marshland than the current walkway.

The judge, acting on the Foundation's motion for summary judgment, concluded that (1) language in the restriction prohibiting structures precluded construction of such a walkway, and (2) notwithstanding that the grantors of the restriction had expressly noted that it was not to affect their right to pass and repass on the restricted property, they had not explicitly reserved the right to improve the existing walkways. We conclude that the grantors of the restriction did not need to reserve explicitly the right to improve the walkway. We also conclude that whether the proposed elevated walkway is a reasonable repair or improvement incidental to the right to pass and repass turns on disputed issues of fact that must be resolved by a trial.

1. *The undisputed facts.* The following facts are not in dispute. The Farbers, the Goulds, and the McAdamses own adjacent parcels of land in Chatham. The parcels are each bisected by Linnell Lane, a private way. To the north of Linnell Lane sit dwelling houses on each of the three parcels and to the south is an expanse of salt marsh, coastal dune, and beach abutting Chatham Harbor. In 1969, the then owners of the three parcels of land conveyed a conservation restriction to the Foundation.[3] The restriction states, in pertinent part:

> "[F]or the purpose of preserving the premises as nearly as may be in the natural state in which they now are:

---

[2]Other property owners, William E. Gould and Sharon Gould, and Paul McAdams and Gayle McAdams, also were defendants in the action but did not appeal.

[3]Before 1969, see St. 1969, c. 666, § 2, conservation restrictions were required to be rerecorded every thirty years in order to retain their effectiveness. Conservation restrictions may now run with the land on a single recording and provide for the perpetual protection of conservation features. See G. L. c. 184, §§ 26-28, 31-32. The restriction on the three parcels here was recorded in 1969 and, after approval by the town's selectmen and the Secretary of Environmental Affairs, was rerecorded in 1978. The validity of the restriction is not an issue on appeal.

"(1) no building or other structure (including, subject to existing easements, public utility poles and drains, but excepting fences) will be erected or placed on the premises;

"(2) no soil, sand, loam, gravel or rock on the premises will be moved or excavated . . . ;

"(3) no paving, filling or dumping will be permitted . . . ;

"(4) no roads will be constructed on the premises; and

"(5) no motor vehicles will be permitted on the premises, except by the grantors . . . or their respective successors in title . . . ."

The conveyance also states:

"Nothing in this instrument shall be construed to affect the right of the grantors and their respective successors in title to the premises to pass and repass over the premises, or their right to regulate or control access by the public to the premises."

The grantors reserved the right to maintain pipes and drains, and, although the purpose of the conservation restriction is to preserve the land "as nearly as may be in the natural state," the grantors expressly reserved the right "to top, trim, cut or remove trees and other vegetation on the premises to preserve the view from any part or parts of the remaining land of the grantors or any of them." There was no explicit reservation of right to modify the walkway.

When the restriction was conveyed in 1969, at least two of the parcels had walkways across the salt marsh leading to the beach.[4] In addition to the walkways, which consisted of seventeen inch wide planks secured by ropes to anchors, small bridges set on concrete blocks crossed a narrow creek partway

---

[4]Parcels one and three had surface-mounted plank walkways when the restriction was conveyed in 1969. The Farbers now own parcel three. The Chatham zoning bylaw defines elevated walkways as "catwalks." The town allows catwalks by special permit, within certain dimensional limitations, as long as the "proposed structure will not be detrimental to safety on waterways, preservation of water quality, ease of access to waterways, equity of interest in utilizing waterways, and the protection of the aesthetic values of the [t]own."

through the salt marsh. In 1996, the Goulds replaced the plank walkway on parcel one with an elevated walkway. Before constructing the elevated walkway, they received approval from the Army Corps of Engineers (Corps), the Massachusetts Department of Environmental Protection (DEP), the Massachusetts Coastal Zone Management Office (CZM), and the Chatham conservation commission.[5]

The Foundation, however, did not learn of the Goulds' elevated walkway until the Farbers requested approval for a similar elevated walkway on parcel three.[6] The Foundation refused the Farbers' request and notified the Goulds that their elevated walkway violated the conservation restriction because it fell within the prohibition against "structures."

In 1997, the Farbers applied for a special permit to construct an elevated walkway. The Chatham zoning board of appeals (board of appeals) voted 3-2 in favor of granting the Farbers a special permit, but that was less than the required super majority. The following year, the Farbers again applied for a special permit, with a "scaled-down proposal" for an elevated walkway, twenty-four inches wide and twenty inches high, in the same location as the current walkway. The vote remained the same and the Farbers were not granted the special permit.

The Foundation's complaint requested (1) a determination that the conservation restriction prohibits the construction of elevated walkways across any of the three parcels and (2) an order compelling removal of the Goulds' existing elevated

---

[5]With the surface-mounted plank walkway, the marsh grass could not grow because the walkway "scoured" the marsh land with each tidal cycle. That the agencies and departments approved the replacement of the plank walkway with an elevated walkway arguably comports with current coastal wetland regulations. See 310 Code Mass. Regs. § 10.32 (1997). The Land Court judge found that "[c]urrent wetlands regulations do not allow installation of a surface-mounted plank walkway like the one that crossed parcel 1 from 1969 to 1996; the elevated walkway, by contrast, allows marsh grass to grow beneath it."

[6]The owners of parcel two, the McAdamses, built a new footbridge and walkway in 1998, without obtaining the necessary permits or notifying the Foundation. Following an order of the Chatham building commissioner, affirmed by the town's zoning board of appeals, the McAdamses removed the bridge and walkway.

walkway. The Land Court granted summary judgment for the Foundation, declaring that the restriction prohibited elevated walkways and directing the Goulds to remove their walkway.

2. *Discussion.* The judge reasoned as follows. The terms of the restriction were clear; they prohibited the erection or placement of new structures other than fences; elevated walkways were structures, and therefore were not permitted. He observed that the grantors had not explicitly retained a right to erect structures incidental to the right to pass and repass, and implicitly ruled that such a retention would have to be explicit.

The judge acknowledged that the proposed elevated walkway was environmentally preferable to the existing plank walkway but rejected that as the central purpose of the restriction, ruling that "[a] plain and expressed purpose of the restriction is to preserve the aesthetic character of the restricted premises in a natural state, and the prohibition against structures is in furtherance of that objective."[7]

The Farbers stated in their affidavit in support of their opposition to the Foundation's motion for summary judgment that the existing wooden system was unsightly and unsafe. They argue that interpreting the restriction to prohibit the construction of an elevated walkway would effectively render useless their right to pass and repass.[8] The Foundation argues that permitting

---

[7]In fact, the conservation restriction did not specifically refer to the scenic or aesthetic condition of the land. Rather, aesthetic considerations are contained in the zoning bylaw provision regarding special permits for catwalks. See note 4, *supra.* The conservation restriction referred to "preserving the premises as nearly as may be in the natural state in which they now are."

[8]The Farbers also contend that the clause referring to the right to pass and repass constituted an exception to the grant of the restriction, rather than a reservation of rights. "The operation of an exception is to retain in the grantor some portion of his former estate, which by the exception is taken out of, or excluded from, the grant; and whatever is thus excepted remains in him as of his former title because it is not granted." *Wood* v. *Boyd,* 145 Mass. 176, 179 (1887). A reservation, on the other hand, "vests in the grantor some new right or interest not before existing in him." *Ibid.* The Farbers claim, therefore, that their right to pass and repass on the property is not affected by the prohibition on structures and it was not necessary for the grantor to explicitly reserve the right to make reasonable repairs or improvements to the walkway. We conclude that the language in the conveyance referring to the right to pass and repass did not constitute an exception or a reservation of rights. The plain purpose of

elevated walkways would create an "expedient exemption" to the restriction against structures that would defeat the purpose of preserving the land in its natural condition. *Goldmuntz* v. *Chilmark*, 38 Mass. App. Ct. 696, 699 (1995). The judge agreed and concluded that the Farbers may pass and repass across their respective portions of the salt marsh using the old plank walkways, but that the "purpose and intent of the retained right to pass and repass" did not express or imply "the right to keep their feet dry in the process."

We do not agree that permitting the elevated walkway, on the facts of this case, would be merely an "expedient exemption" to the prohibition against structures. Contrast *Goldmuntz* v. *Chilmark, supra* at 698-699 (swimming pool would be expedient exemption to restriction prohibiting structures, and therefore not allowed, despite reservation of right in deed to allow accessory structures appropriate to certain recreational uses). Cf. *Walker* v. *Gross*, 362 Mass. 703, 707 (1972) (use of premises for apartment house not violation of restriction prohibiting use of property for any business purpose).

In our decisional law, the "right to pass and repass" has usually been discussed in the context of an easement conveyed by a grantor to a party who does not have a possessory interest in the land. Although not expressed as an easement, the right of the Farbers to pass and repass is in the nature of an easement, and the cases involving easements are instructive. In such cases, the right to pass and repass has been found to include all rights reasonably incidental to the enjoyment of the right to pass, including the right to make reasonable repairs and improvements to the right of way. Compare *Sullivan* v. *Donohoe*, 287 Mass. 265, 267 (1934) ("When an easement or other property right is created, every right necessary for its enjoyment is included by implication"); *Guillet* v. *Livernois*, 297 Mass. 337, 340 (1937) ("The right of anyone entitled to use a private way to make reasonable repairs and improvements is well established in cases where the way is already in use"); *Hodgkins* v. *Bian-*

---

the language was not to reserve a new right in the grantor, or to except a portion of the grant, but rather to recognize the continuing right of the landowner to pass over his or her property. Cf. *Burritt* v. *Lilly*, 40 Mass. App. Ct. 29, 32-33 (1996) (right to pass and repass in grant merely provided specific assurance of right of enjoyment without trespassing).

*chini*, 323 Mass. 169, 173 (1948) (right to use "Lane" included right to make reasonable repairs and improvements). In certain circumstances, the reasonable use may vary from time to time with what is necessary to constitute full enjoyment of the premises. *Brodeur* v. *Lamb*, 22 Mass. App. Ct. 502, 504 (1986).

We see no reason, in the circumstances of this case, to conclude that a landowner should be in a worse position than would be an easement holder in the same circumstances. We also do not see any reason to conclude, in these circumstances, that the landowner's right to make reasonable repairs or improvements incidental to a right to pass and repass would have to be explicitly reserved.

As matter of law, we conclude that the right to make reasonable repairs or improve the passageway is incidental to the landowner's right to pass and repass. Whether the proposed elevated walkway falls within the prohibition on structures or is a reasonable repair or improvement incidental to the right to pass and repass is a question for the fact finder, which must be considered in light of the meaning of the conveyance and the intent of the parties. Cf. *Merry* v. *Priest*, 276 Mass. 592, 599 (1931) (where right of way exists, extent is matter of proof). A restriction, like a deed, "is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." *Walker* v. *Sanderson*, 348 Mass. 409, 412 (1965). In addition, "the restriction 'must be construed beneficially, according to the apparent purpose of protection or advantage . . . it was intended to secure or promote.' " *Maddalena* v. *Brand*, 7 Mass. App. Ct. 466, 469 (1979), quoting from *Jeffries* v. *Jeffries*, 117 Mass. 184, 189 (1875).

The stated purpose of the restriction was to "preserv[e] the premises as nearly as may be in the natural state in which they now are." See G. L. c. 184, § 31, as inserted by St. 1969, c. 666, § 5 ("conservation restriction means a right . . . appropriate to retaining land or water areas predominantly in their natural, scenic or open condition"). Inherent in the "natural state" of the land are environmental concerns. Cf. *Parkinson* v. *Board of Assessors of Medfield*, 398 Mass. 112, 113 n.1 (1986) (restric-

tions allowed pursuant to statute are "important to the cause of environmental conservation").

As the judge noted, an elevated walkway that does not "scour" the marshland with each tide may foster the restriction's natural, environmental objectives by allowing the marsh grass to grow. Moreover, the growth of marsh grass would further the aesthetic, scenic character of the land by camouflaging the walkway. Important to the balancing of scenic and natural conditions is, as the judge found, the fact that wetlands regulations no longer permit surface-mounted walkways. With the exception of the Foundation, all of the relevant environmental agencies (the Corps, the DEP, and the CZM) approved the elevated walkway on parcel one, in part presumably because such a walkway would allow the surrounding marshland to return, or come closer to, a natural condition.[9] Nevertheless, the judge did not consider the environmental benefit of permitting the landowners to repair or improve the walkways with elevated walkways, but rather focused on the aesthetic, scenic condition of the land.

We do not decide that the materials submitted by the Farbers in opposition to the Foundation's motion for summary judgment establish that an elevated walkway is necessary to give effect to the express right of the grantors and their successors in interest to pass and repass. We do conclude, however, that these materials were sufficient to show the existence of disputed questions of fact which must be resolved. Specifically: whether the existing walkway was inadequate to effectuate the Farbers' right to pass and repass because it was unsafe[10]; and whether, in light of current wetland regulations, the scope and dimension of the proposed elevated walkway was a reasonable improvement consistent with the restriction on structures or is so different

[9]The record on appeal does not include the reasoning relied upon by these authorities. We instead rely upon the Land Court judge's findings of fact. In addition, the decision by the board of appeals states that an elevated walkway would have "less of an impact on the environment, that is, the marsh vegetation, than the existing plank walk."

[10]The record suggests that the tidal pattern in Chatham Harbor has changed since 1969. Cf. *Guillet* v. *Livernois*, 297 Mass. at 340 (right to make reasonable repairs and improvements is more clearly established "where without improvement the way is impassable and useless").

from the existing walkway as to be an unreasonable improvement. In determining whether replacing the walkway with an elevated walkway is a reasonable repair or reasonable improvement, the trier of fact should also consider the environmental benefit of an elevated walkway as part of the land's "natural condition." The judgment is reversed, and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*