## MAUREEN BRADLEY HAUGH *vs.* JOANNE BRETT SIMMS & another.[1]

No. 04-P-100.

Suffolk. December 15, 2004. - October 19, 2005.

Present: ARMSTRONG, C.J., BECK, & McHUGH, JJ.

*Real Property,* Easement, Deed. *Easement. Deed,* Construction.

This court concluded that the circumstances surrounding two deeds conveying a road to the Commonwealth, coupled with the language of the deeds themselves, were sufficient to establish an easement over that road for the benefit of the defendant's lot. [784-787]

A Land Court judge did not err in permitting the defendant, who held an easement over a certain road, to lay utilities pursuant to G. L. c. 187, § 5, where the road qualified as a private way [787-789]; further, the application of that statute to the defendant's easement did not violate either the doctrine of prior public use or the provision of the Massachusetts Constitution prohibiting diversion or disposition of public land for another, inconsistent use without explicit legislative authorization [789-790], and the scope of the easement did not include any part of the neighboring State forest [790].

CIVIL ACTION commenced in the Land Court Department on March 26, 1999.

The case was heard by *Leon J. Lombardi,* J.

*Joseph Callanan,* Assistant Attorney General, for the Commonwealth.

*Anthony P. Doyle* for Joanne Brett Simms.

BECK, J. This case involves a dispute between Maureen Bradley Haugh and Joanne Brett Simms over a strip of land known as Bear Mountain Road. The strip is located near Beartown State Forest in Berkshire County and is shown on the appended sketch as lots 7A and 4A. Simms owns the property shown as lots 4 and 4B on the sketch, and Haugh owns the

---

[1]The Commonwealth.

property shown as lots 7 and 7B. (We refer to lots 4 and 4B as the Simms lot, and to lots 7 and 7B as the Haugh lot.) The issue presented is whether conveyances in 1940 from previous owners Noel W. Hart and Rufus C. Brett to the Commonwealth created an easement, over the lot 7A portion of Bear Mountain Road, that benefits the Simms lot.

Haugh brought an action against Simms and the Commonwealth (acting through the Department of Environmental Management), seeking a declaration that Simms has no easement in the strip of land referred to above. On the day of trial, the Commonwealth filed a cross claim against Simms alleging that Simms has no greater rights in the strip than any other member of the public. After a one-day trial consisting of a view, three witnesses, and twenty exhibits, a Land Court judge determined that there was such an easement and that therefore Simms could lay utilities along lots 4A and 7A pursuant to G. L. c. 187, § 5. The Commonwealth appeals from the corrected judgment dated September 25, 2003. (We note that the corrected judgment contains a typographical error in that it refers to G. L. c. 187, § 4, rather than to G. L. c. 187, § 5, which was the focus of the judge's analysis.)

*History of the property.* On November 7, 1906, pursuant to a petition of the selectmen of the towns of Monterey and Great Barrington, where Bear Mountain Road is located, the Berkshire County commissioners discontinued as a county way the portion of Bear Mountain Road at issue in this case. The land involved, designated on the sketch as lots 7A and 4A, reached from its start at the intersection of Blue Hill Road through the Haugh and Simms lots. From 1906 through 1940, the Commonwealth acquired all land abutting Bear Mountain Road, except the Haugh and Simms lots, in order to incorporate the land into Beartown State Forest.

The Commonwealth acquired lot 7A, the portion of Bear Mountain Road bisecting the Haugh lot, from Noel Hart by deed dated May 15, 1940 (the Hart deed). It acquired lot 4A, the portion bisecting the Simms lot, from Rufus Brett by deed dated May 13, 1940 (the Brett deed). On June 6, 1940, the Commonwealth recorded the Hart deed at 9:33 A.M., and the Brett deed at 9:36 A.M., at the Southern Berkshire registry of deeds.

The Brett deed provided in relevant part:

"This conveyance is made subject to the following conditions:

"1. There shall be erected at no cost to the grantor a barb [*sic*] wire fence on one or both sides of said strip [lot 4A] for such distance or distances as may be considered essential by the grantor for pasturing cattle on either or both sides of the same.

"2. The grade of any road or roads over other land of the grantor shall at points of contact with the improved road to be built over said strip be made at a level satisfactory to the grantor and suitable barways provided.

"3. The grantor shall have access at all times from his property to and over the new road passing through said strip."

The Hart deed stated in relevant part:

"This conveyance is made subject to the following conditions:

"1. There shall be erected at no cost to the grantor a barbed wire fence on one or both sides of said strip [lot 7A] for such distance or distances as may be considered essential by the grantor for pasturing cattle on either or both sides of the same.

"2. There shall be laid at no cost to the grantor a new line of one (1) inch pipe for water supply purposes from the source of the present supply to the grantor's home at the point of the existing connection. The location and depth of said new pipe line shall be subject to approval of the grantors.

"3. Any work that may be necessary or desirable exterior of the boundaries of the strip hereby conveyed to protect the spring and springhouse from road drainage and road grading shall be done subject to the approval of and in a manner satisfactory to the grantor."

Haugh acquired the Haugh lot in 1968 and traces her title

back to Noel Hart. Simms acquired the Simms lot in 1997 and is a successor in title to Rufus Brett. (There was no evidence that the properties had ever been owned by a common grantor.) In order for Simms to gain access to the Simms lot, she must pass from Blue Hill Road through lot 7A, the portion of Bear Mountain Road that bisects the Haugh lot and is the focus of this case.

*Land Court's findings of fact.* The trial judge's findings of fact concerning the circumstances surrounding the Brett and Hart deeds, as well as the history of access to the Simms lot, are as follows. Brett and Hart were friends. Before selling lot 7A to the Commonwealth, Hart let Brett use that portion of Bear Mountain Road on a permissive basis. Consequently, Brett did not need an easement in order to gain access to his property (now the Simms lot). The Brett family used Bear Mountain Road (including lot 7A) for access to the Simms lot for generations for cutting wood and grazing cattle. This use existed for seventy-five years before Rufus Brett conveyed lot 4A, his portion of Bear Mountain Road, to the Commonwealth. In addition to the Brett and Simms families' use of Bear Mountain Road for access to the Simms lot, Haugh had also used the road for logging purposes. Hunters, horseback riders, and hikers also used the road.

*Discussion.* 1. *Existence of an easement.* We agree with the Land Court judge that the circumstances surrounding the 1940 Brett and Hart deeds, coupled with the language of the deeds themselves, are sufficient to establish an easement over lot 7A for the benefit of the Simms lot. (The Commonwealth appears to concede that Simms has an easement over lot 4A, which is the portion of Bear Mountain Road that bisects the Simms lot.)

Because the Haugh and Simms lots were never owned by a common grantor, as matter of law Simms is not entitled to either an easement by necessity or an easement by implication over lot 7A. See *Nylander* v. *Potter*, 423 Mass. 158, 162 (1996) ("Without previous common ownership, Potter cannot claim an easement by necessity"); *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 628-629 (1990) ("The focus of our attention in determining whether the defendants have a reserved easement by implication . . . must be on the intent of the [grantors] and

their grantees at the time common ownership was first severed"). Furthermore, Simms does not claim that she is entitled to an easement by either estoppel or prescription. The relevant inquiry, therefore, is whether the deeds conveying lots 4A and 7A to the Commonwealth contained a grant of an easement.

"Every deed is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." *Bessey* v. *Ollman*, 242 Mass. 89, 91 (1922). "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 179 (1998).

As the Land Court judge noted and as the Commonwealth emphasizes on appeal, the language in the Brett deed is insufficient by itself to create an express easement. However, when we view the sale of lots 4A and 7A to the Commonwealth in light of the surrounding circumstances, we agree with the Land Court judge that "the parties intended such an express grant." See *Parkinson* v. *Assessors of Medfield*, 395 Mass. 643, 645-646 (1985), *S.C.*, 398 Mass. 112 (1986), quoting from *Dunlap Investors, Ltd.* v. *Hogan*, 133 Ariz. 130, 132 (1982) ("While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements").

Here the parties involved in the conveyances expected that the Commonwealth was going to build a road over lots 4A and 7A into Beartown State Forest. Both the Brett and Hart deeds appear to have been drafted to ensure that Brett and Hart would have a say about how the road was built and that they would have access over it. The Commonwealth never built the contemplated road, but this fact should not deprive Simms of the right of access her predecessor in title acquired. The Brett deed specifically states in its third condition that "[t]he grantor shall have access at all times from his property to and over the

new road passing through said strip." We agree with the Land Court judge that Brett and the Commonwealth intended that Brett and his grantees would have access to his lot via Bear Mountain Road as he had before the deeds were executed and that the Brett deed contained the grant of such an easement. Contrast *Bessey* v. *Ollman*, 242 Mass. at 91 ("There is nothing outside the deed to indicate what his intent was").

To be sure, the Brett and Hart deeds are poorly drafted. Nevertheless, when we consider all the factors in this case — the language of the deeds (especially paragraph three of the Brett deed), the purpose of the Commonwealth's purchase of the land, the grantors' previous use, the relationship between the Brett and Hart, and the fact that Bear Mountain Road is the only means of access to the Simms lot — we conclude that the Land Court judge's interpretation was not in error. The parties involved intended Brett to have access over Bear Mountain Road (both his and Hart's former portion) to his property. See *Scagel* v. *Jones*, 355 Mass. 208 (1969); *Estes* v. *DeMello*, 61 Mass. App. Ct. 638 (2004). See also Restatement of Property § 476 comment g, at 2983 (1944) ("If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created").

The Supreme Judicial Court has upheld easements containing similar language. See, e.g., *Johnson* v. *Kinnicutt*, 2 Cush. 153, 156 (1848) ("together with the right of passing and repassing over the space of twenty feet between the west wall of the store aforesaid and the eastern line of the before granted premises"); *Short* v. *Devine*, 146 Mass. 119, 122 (1888) ("to pass and repass over and upon a strip of land ten feet in width on the southerly line of above granted premises to and from North Court Street"); *Marden* v. *Mallard Decoy Club, Inc.*, 361 Mass. 105, 106 (1972) ("all necessary privileges of passing and repassing to improve their several shares"). The Commonwealth's reliance on *Nylander* v. *Potter*, 423 Mass. at 162-163, on this point is unwarranted. That case dealt with an abutter's easement upon the discontinuance of a road where there was no easement in any deed, a situation completely different from the instant case. See *ibid.*

The Commonwealth argues that even if the Commonwealth intended to grant Brett an easement over lot 7A, it did not have the power to do so as matter of law, because at the time the Brett deed was executed on May 13, 1940, the Commonwealth did not yet own lot 7A. The Commonwealth acquired lot 7A from Hart three days later, on May 16, 1940. Brett was not a party to that deed. Given the circumstances surrounding the Commonwealth's purchase of both lots and the brief time between the execution of the deeds, we conclude that there was no error in the Land Court judge's finding that the deeds were substantially contemporaneous and therefore were appropriately characterized as a single transaction.

This conclusion is supported by the facts that Brett and Hart knew that the Commonwealth was purchasing the entire road (purportedly for public use), that the deeds were very similarly worded, and that the Commonwealth recorded the two deeds on the same day within minutes of each other. We are not persuaded that the outcome of this case should rest on the fact that Hart may not have signed the deed with the Commonwealth until three days after Brett did so. Nor should the case rest on which deed the Commonwealth happened to hand the clerk at the registry of deeds first on the day of recording.

2. *Right to lay utilities pursuant to G. L. c. 187, § 5.* General Laws c. 187, § 5, as amended through St. 1988, c. 334, § 6, provides that

> "[t]he owner or owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other private ways shall have the right by implication to place, install or construct in, on, along, under and upon said private way or other private way pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer service, provided such facilities do not unreasonably obstruct said private way or other private ways, and provided that such use of the private way or other private ways does not interfere with or be inconsistent with the existing use by others of such way or other private ways . . . ."

The Land Court judge found that Simms was entitled to lay

utilities "in, on, along, under and upon lot 4A and lot 7A to the extent permitted" by this statute. The Commonwealth argues that even if Simms has an easement over Bear Mountain Road, she may not lay utilities pursuant to G. L. c. 187, § 5, because Bear Mountain Road is not a private way. The parties agree that the road is not a public way, so the Commonwealth's argument is essentially that Bear Mountain Road is neither a public nor private way. (We note that the Commonwealth's claim that the defendant Simms waived the G. L. c. 187, § 5, issue is without merit.)

In *Opinion of the Justices*, 313 Mass. 779 (1943), the Supreme Judicial Court provided guidance as to the definition of a private way. There the court recognized that the term "private way" is "susceptible of different meanings." *Id.* at 781. The court then discussed possible definitions of a private way:

> "The words may well mean or include defined ways for travel, not laid out by public authority or dedicated to public use, that are wholly the subject of private owner- ship, either by reason of the ownership of the land upon which they are laid out by the owner thereof . . . , or by reason of ownership of easements of way over land of another person."

*Id.* at 782-783. The Commonwealth relies on this dictum to support its argument that Bear Mountain Road is not a private way. However, the definition put forth in *Opinion of the Justices*, *supra*, is not an exclusive definition, and a failure to meet its requirements does not automatically mean that Bear Mountain Road is not a private way.

When the county discontinued Bear Mountain Road in 1906, title to the road reverted to the abutting landowners, here Brett and Hart. See *Nylander* v. *Potter*, 423 Mass. at 161. At that point the road became a private way that was "wholly the subject of private ownership." *Opinion of the Justices*, 313 Mass. at 782. That private way was then sold to the Commonwealth. See *Barlow* v. *Chongris & Sons, Inc.*, 38 Mass. App. Ct. 297, 299 (1995) (holding that a driveway easement is a private way for purposes of G. L. c. 187, § 5).

The Commonwealth argues that simply because it was a

public agency that purchased the private way it ceased to be private. We are unpersuaded by that contention. Whether a way is public or private is based on the use of the way, not solely on who owns it. See *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 83-84 (1979) (a way becomes public in character through either laying out by a public authority, prescription, or, prior to 1846, by dedication to public use by the owner coupled with acceptance by the public). See also *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703, 703 n.2 (1979) (statutory private way is a way laid out and accepted by town officials for the use of one or more of the inhabitants).

The Commonwealth's arguments rest on its conclusion that the definition of private way set forth in the *Opinion of the Justices*, *supra*, is the only possible definition. However, the Supreme Judicial Court there acknowledged that the definition "may include" the description it used and that defining private way was not necessary to decide that case. *Opinion of the Justices*, 313 Mass. at 782-783. The Commonwealth has provided no further support that its purchase of Bear Mountain Road from private landowners resulted in the road becoming something other than a private way, especially when there have been no changes in its use.

Finally, we note that we are likewise unconvinced by the Commonwealth's argument that Bear Mountain Road cannot be a private way because the Commonwealth is not a "person" under the definition in *Opinion of the Justices*, *supra*. As previously discussed, the court did not set out an exclusive definition, nor did it create a requirement that the land owner be a "person" as defined for constitutional purposes, as the Commonwealth argues. The Land Court judge did not err in permitting Simms to lay utilities on lots 4A and 7A pursuant to G. L. c. 187, § 5.

3. *Doctrine of prior public use.* The Commonwealth further argues that allowing Simms to lay utilities on Bear Mountain Road would violate the doctrine of prior public use and the Massachusetts Constitution because it would represent a diversion or disposition of public land for another, inconsistent use without explicit legislative authorization. See art. 49 of the Amendments to the Massachusetts Constitution, as amended

by art. 97 of the Amendments; *Opinion of the Justices,* 383 Mass. 895, 905 (1981). We agree with the Land Court judge that this argument also fails.

First, the easement over lots 4A and 7A was created at the time the deeds were transferred to the Commonwealth as part of the sale of the land. Therefore, no new rights in the land have been created by the Land Court's or this court's decision; Simms and her predecessors in title have had this right of access all along. Therefore, Bear Mountain Road is not being "disposed of" as the term is used in art. 97, so that constitutional provision is not an obstacle to Simms's easement. See *Opinion of the Justices,* 383 Mass. at 918-919; *Miller* v. *Commissioner of the Dept. of Envtl. Mgmt.,* 23 Mass. App. Ct. 968, 970 (1987).

Second, although G. L. c. 187, § 5, was enacted after Simms's easement was granted, the Supreme Judicial Court has held that the statute applies retroactively. *Nantucket Conservation Foundation, Inc.* v. *Russell Mgmt., Inc.,* 380 Mass. 212, 218 (1980) (explaining that applying the right to lay utilities retroactively does not create a new authorization to invade land where no previous access was allowed). Therefore, applying G. L. c. 187, § 5, to Simms's easement also does not constitute a disposition of public land. Given these conclusions, we need not decide whether Bear Mountain Road was acquired for conservation purposes as the Commonwealth argues. See art. 49 of the Amendments to the Massachusetts Constitution, as amended by art. 97 of the Amendments. We note, however, that it is unlikely that the Commonwealth has shown that Bear Mountain Road qualifies under G. L. c. 132, § 33, as State forest land.

4. *Scope of the easement.* Finally, we note the Commonwealth's assertion at oral argument that allowing Simms to lay utilities pursuant to G. L. c. 187, § 5, would have the effect of allowing her to lay utilities upon the whole of Beartown State Forest. We see nothing in the record to support this claim. Simms's easement extends from Blue Hill Road over lots 4A and 7A and ends at Beartown State Forest; it does not include any part of the State forest itself.

*Judgment affirmed.*