THEODORE POMEROY & others *vs.* REFINE LATTING.

Where two or more deeds are made simultaneously and so connected with each other that they may be regarded as one transaction, they will be held to take effect in such order of priority and succession as shall best carry out the intention and secure the rights of all the parties.

The owner of real estate executed and delivered two mortgages of it on the same day, one of which was declared to be subject to the payment of $2,000 secured by the other, and was conditioned for the payment of $1,100 in 1851; and the other was conditioned for the payment of notes for $2,000, which the mortgagee had signed as surety for the mortgagor, payable in 1852 and 1853, and which were held by the first mortgagee. *Held,* that the second mortgagee did not take a seisin prior to the first.

WRIT OF ENTRY to foreclose a mortgage of land in Mount Washington. Trial and verdict for the defendant in the court of common pleas in Berkshire, before *Bishop,* J. The plaintiffs alleged exceptions, which were argued at the last term in Berkshire, and the substance of which is stated in the opinion.

*J. D. Colt,* for the plaintiffs.

*I. Sumner,* for the defendant.

SHAW, C. J. It appears in this case that the mortgage on which the suit was brought was made to the plaintiffs by the name and style of the Copake Iron Company. No objection is taken to this conveyance.

It appears that this deed and the mortgage to Hugh McClel- .an, under which the defendant claims title, were made by the same grantors on the same day, and so refer to each other as to constitute one and the same transaction.

It therefore brings them within a well known rule of law, that when two or more deeds, conveyances, or contracts of any sort are made simultaneously, and so connected with each other that they may be regarded as one transaction, these contracts and conveyances shall be held to take effect in such order of priority and succession as shall best carry into effect the intention and best secure the rights of all the respective parties.

These two mortgages were executed and delivered on the same day, were acknowledged before the same magistrate at the same time. The lands described are the same. The deed to the plaintiffs refers to that made to McClellan, in this manner; after the descriptive parts, it proceeds thus: " Subject to the payment of the sum of two thousand dollars secured by a mortgage of this date to Hugh McClellan, by the parties of the first part hereto," that is, by the same grantors, with the habendum, and covenants against all incumbrances, " with the excep tion of the forementioned mortgage for the payment of two thousand dollars." This mortgage is conditioned for the payment of $ 1,100, and interest annually from December 1st 1849, to April 1st 1851.

The mortgage to McClellan is of the same premises, with an habendum to him and his heirs, conditioned that if the grantors their heirs, &c., shall pay to the Copake Iron Works, (the plaintiffs,) their heirs, &c., a note of $ 1,000 in April 1852, and a note of $ 1,000 in April 1853, and interest due, &c., which said McClellan has signed with and as surety for the grantors, then this deed and said notes shall be void, otherwise shall remain in full force. This therefore is the mortgage referred to in the former deed.

Both mortgages were made to secure the plaintiffs, one for $ 1,100, and the other for $ 2,000 for which McClellan was surety for the plaintiffs. This connects them together and makes them one transaction.

The ground taken by the defendant is, that he had a prior seisin by force of the mortgage to McClellan assigned to him. Upon the true construction of these simultaneous deeds, they would take effect, and vest the prior seisin according to the

intent of the parties; and that must be so as best to secure the rights of both.

The deed to McClellan was prior in one respect only. The mortgage to the plaintiff was made subject to the prior payment, not to the prior seisin of McClellan.

The mortgage to McClellan was to be void on payment by the principal promisors, and not on any payment to be made by himself, though he would be bound to pay as surety if they did not, and therefore the mortgage was in effect a security for his indemnity. But the mortgage for $ 1,100 to the plaintiffs was to secure a note payable on the 1st of April 1851. But the notes against which the surety, McClellan, was to be indemnified, were for $ 1,000 each, payable respectively on the 1st of April 1852 and 1853. And all three of the notes were due to the plaintiffs and held by them, and were produced at the trial.

Taking both mortgages, together with the relations in which the parties stood to each other, it appears manifest that the ultimate object of both was to secure the payment of all the three notes held by the plaintiffs, to the extent of the value of the mortgaged premises, and the rents and profits of them. But the note to the plaintiffs would first become due; they would have the first occasion to enter, either before condition broken, to take the rents and profits, or after condition broken, to foreclose.

Then as between these simultaneous mortgages — the plain tiffs' being for a debt due, and that of McClellan for an indemnity only — that construction will best carry into effect the obvious intent of the parties which gives the plaintiffs a prior seisin and right of entry, and postpones the right of McClellan as against the plaintiffs to a time when he shall have been called upon for payment as surety.

The defendant, when McClellan had paid nothing, took a mere naked assignment of McClellan's mortgage; McClellan had not been damnified; as against him, either the condition had not been broken, or only nominally, by the nonpayment by the principals; the defendant could have no higher or better title, as between him and these plaintiffs, than McClellan him

self had; and therefore, at the time of this trial, the defendant did not establish a prior and older legal title. *Rice* v. *Dewey*, 13 Gray, 47.

The only question in this case is to the priority of legal title; the equities of the case will be open hereafter.

In regard to the evidence offered and rejected, we are not prepared to say that some of it might not be objectionable, and contrary to the rule of law, as admitting parol evidence to alter or control written agreements and contracts. But we think that the internal evidence from the deeds themselves, together with evidence of external circumstances, showing the relations of the parties to each other, to explain and give effect to their language, which is admissible, are sufficient in the present case to establish all the facts on which our conclusions in matter of law are placed. *Exceptions sustained.*