RAOUL F. GONCALVES & others[1] *vs*. CITY OF BOSTON
& another.[2]

No. 05-P-409.

Suffolk. February 17, 2006. - April 21, 2006.

Present: LAURENCE, DOERFER, & MILLS, JJ.

*Civil Service,* Police. *Municipal Corporations,* Police. *Words,* "Original ap-
pointment," "Promotional appointment."

In an action brought in Superior Court by plaintiffs seeking relief from the ef-
fects of G. L. c. 31, § 58A, which established an age cap for "original"
appointments to the Boston police department (BPD), the judge correctly
determined that § 58A applied to the plaintiffs (individuals employed by
the Boston municipal police department and the Boston housing police
department, who had sought employment with the BPD) and precluded the
plaintiffs from being eligible for consideration for appointment as officers
to the BPD due to their age [183-184]; further, the judge correctly
determined that the plaintiffs, who had not taken a promotional examina-
tion and who belonged to a police force distinct from the BPD, were not
eligible for promotional appointments to the BPD under G. L. c. 31, § 7
[184-186].

CIVIL ACTION commenced in the Superior Court Department on
March 15, 2002.

The case was heard by *Thomas P. Billings*, J., on motions for
summary judgment.

*David A. Rich* for the plaintiffs.

*Alexis N. Butler* for city of Boston.

*Robert L. Quinan, Jr.*, Assistant Attorney General, for chief
human resources officer for the Commonwealth.

MILLS, J. The plaintiffs filed this action seeking relief from
the effects of G. L. c. 31, § 58A, which, upon adoption by the

___

[1]Paul Hamilton, Kelly A. Coutts, Michael W. Duggan, John F. Horan, John
F. Breen, John F. Devine, Kevin Egan, Patrick F. Cadogan, and Joao J.
Monteiro.

[2]Chief human resources officer for the Commonwealth.

city of Boston (city or Boston), established an age cap of thirty-two years for original appointments to the Boston police department (BPD). The plaintiffs include nine individuals who were employed by the Boston municipal police department (BMPD) and one individual who was employed by the Boston housing police department, who all sought, but did not attain, employment with the BPD. The defendants are Boston and the chief human resources officer of the Commonwealth (HRD).[3] In their complaint, the plaintiffs sought declaratory relief, equitable relief, and damages.

Boston moved for judgment on the pleadings; the plaintiffs cross moved for summary judgment; and HRD moved for summary judgment. A Superior Court judge granted the defendants' motions, denied the plaintiffs' motion, and dismissed the complaint. We affirm.

1. *Factual background.* a. *The process by which appointments are made to the BPD.* HRD administers the Commonwealth's civil service examinations, and after each such examination, compiles a list of individuals who passed the examination and who are eligible for consideration for appointment as civil service police officers. G. L. c. 31, § 27. When Boston decides to appoint new officers to the BPD, it submits a requisition to HRD stating the number of positions it desires to fill. G. L. c. 31, § 6. Upon receipt of this request, HRD creates a certification list from the eligible list created after the last civil service examination. *Ibid.* The lists are created by ranking eligible candidates by score and by other criteria unrelated to the plaintiffs' claims.[4]

b. *The adoption of a statutory age cap for original appointments to the BPD.* On August 10, 2000, the Legislature passed c. 242 of the Acts of 2000, later codified as G. L. c. 31, § 58A, which states in its entirety:

---

[3] The plaintiffs originally sued Boston and "James Harnett, Jr., Personnel Administrator of the Human Resources Division of the Executive Office for Administration and Finance of the Commonwealth of Massachusetts." The Commonwealth represents, and no other party contests, that the title of personnel administrator has been changed to chief human resources officer.

[4] There are only three permissible ways for the BPD to hire outside of the statutory parameters of G. L. c. 31, and none of the plaintiffs argues that he should have been appointed under one of these exceptions.

"Notwithstanding the provisions of any general or special law to the contrary, in any city, town or district that accepts this section, no person shall be eligible to have his name certified for original appointment to the position of firefighter or police officer if such person has reached his thirty-second birthday on the date of the entrance examination. Any veteran shall be allowed to exceed the maximum age provision of this section by the number of years served on active military duty, but in no case shall said candidate for appointment be credited more than four years of active military duty."

Boston accepted c. 242 (hereinafter referred to as § 58A) in December, 2000, and notified HRD of its acceptance on January 23, 2001.

c. *Original appointments made since the adoption of G. L. c. 31, § 58A, by Boston.* On April 28, 2001, HRD administered an open competitive examination for police officer positions. Each of the plaintiffs took this examination. After the examination, HRD created an eligible list for appointment to the BPD. Due to the earlier adoption of § 58A by Boston, HRD did not include any individuals on the city's eligible list whose age at the time of the examination made them ineligible for original appointment as Boston police officers. Since all of the plaintiffs were age thirty-two or older at the time the examination was administered, their names were not included on the eligible list for Boston.

d. *A brief history of the BMPD.* For the first fifteen years of its existence, the BMPD was a division of Boston's public facilities department, which was exempt from the civil service classification laws.[5] In 1994, the BMPD became a division of Boston's property management department, which is subject to the civil service laws. A dispute arose as to whether BMPD employees were civil service employees, and ultimately, the civil service commission (commission) determined that BMPD employees were provisional civil service employees.

In the summer of 1998, the Legislature enacted a law certifying certain provisional employees within Boston, including

---

[5]The duties of BMPD officers include protecting Boston's public properties and buildings.

BMPD employees, as permanent civil service employees. St. 1998, c. 282. By statute, it was the responsibility of HRD, with the approval of the commission, to establish new civil service classifications for the unclassified municipal jobs. Initially, HRD recommended that the BMPD officers be classified not as police officers, but as "Asset Security Officers." Eventually, HRD agreed to recommend to the commission that an entirely new series of civil service positions be created for employees of the BMPD, and in June, 2003, the commission approved and established a new civil service classification entitled "Boston Municipal Police Officer." This is the title held by BMPD officers, and it is distinct from the civil service classification held by BPD officers.

2. *Discussion.* a. *Application of G. L. c. 31, § 58A, to the plaintiffs.* The judge correctly determined that G. L. c. 31, § 58A, applied to the plaintiffs because they were seeking "original appointments" within the meaning of the civil service law, which defines an "original appointment" as one made pursuant to G. L. c. 31, § 6. G. L. c. 31, § 1.[6] Section 6 provides that "each . . . original appointment in the official service shall be made after certification from an eligible list established as the result of a competitive examination for which civil service employees and non-civil service employees were eligible to apply, except as otherwise provided by sections twenty-six, forty, forty-seven, fifty-six, and sixty." This is the process that was followed here.[7] It is undisputed that in April, 2001, HRD administered an open competitive civil service examination for all police candidates Statewide; that the plaintiffs took this examination; and that at the time of the April, 2001, examination, they were all over the age of thirty-two. Since Boston had adopted § 58A, HRD did not include on Boston's eligible list the plaintiffs or any other individuals

---

[6]An original appointment may also be made pursuant to G. L. c. 31, § 28, which applies to laborers, and thus, as acknowledged by the plaintiffs, is not applicable to this case.

[7]The exceptions stated in G. L. c. 31, § 6, that, for example, provide preferences for veterans (G. L. c. 31, § 26) or permanent employees who were separated from their position because of lack of work or funding (G. L. c. 31, § 40), do not apply to the plaintiffs.

whose age at the time of the examination made them ineligible for original appointment as Boston police officers.

The plaintiffs argue that § 58A should not apply to them because they were not seeking original appointments with the BPD. Relying on "common sense" and a dictionary's definition of "original," they argue that they could not have been seeking original appointments because they are already civil service police officers. The plaintiffs contend that they had "already achieved" original appointments pursuant to G. L. c. 31, § 56 (incumbent status of employees).

The plaintiffs' argument fails because § 6 expressly provides that original appointments will be made based on "an eligible list established as the result of a competitive examination for which *civil service employees* and non-civil service employees" are eligible (emphasis added). G. L. c. 31, § 6. Thus, § 6, by its very terms, contemplates that individuals who are already civil service employees may take competitive examinations in order to become eligible for original appointments to other civil service positions.

That the plaintiffs hold original appointments to their *current* civil service positions does not suggest that if they were to become employed by the BPD it would not be by way of original appointment to that force. As noted above, the language in § 6 recognizes that individuals who are already civil service employees may take competitive examinations in order to become eligible for original appointments to different civil service positions.

The judge correctly decided that the provisions of § 58A applied in the circumstances present here and precluded the plaintiffs from being placed on Boston's eligible list.

b. *The Superior Court correctly determined that the plaintiffs were not eligible for promotional appointments to the BPD.* Assuming, arguendo, that the plaintiffs are correct that they were not seeking "original appointments," the only other manner in which they could have been appointed to the BPD was by way of a promotional appointment. *Joseph* v. *Administrator of the Div. of Personnel Admn.*, 11 Mass. App. Ct. 943, 943 (1981) ("[c]ivil service positions may be filled in two ways . . .: (a) by original appointment under § 6 or (b) by promotional ap-

pointment under [G. L. c. 31,] § 7''). The plaintiffs' argument that their applications for positions with the BPD should have been considered as promotional appointments fails for two independent reasons.

First, and simply, they did not take a promotional examination. Pursuant to the civil service law, promotional appointments are made after certification from an eligible list established as a result of one of three types of promotional examinations. G. L. c. 31, § 7. Here, it is undisputed that the examination that each of the plaintiffs took in April, 2001, was the open competitive examination for original appointments, not promotional appointments.

Second, promotional appointments are open to employees in the next lower title in the same force, but BMPD and BPD are distinct police forces. Under G. L. c. 31, § 1, a "promotional appointment" is one made "pursuant to section seven . . . of a person employed in one title to a higher title in the same or a different series, or to another title which is not higher but where substantially dissimilar requirements prevent a transfer pursuant to section thirty-five."[8] Where, as here, the promotional appointment relates to a city's police force, § 7 incorporates the procedures set out in § 59.[9] Section 59 provides that "[a]n examination for a promotional appointment to any title in a police or fire force shall be open only to permanent employees in the next lower title in such force. . . ."

Although the plaintiffs argue that the "activities of the BPD and the BMPD are sufficiently intertwined so as to render them as virtually the same 'force,' " their argument is not supported by the record.[10,11]

___

[8]Although the civil service law would *permit* the BPD to accept transfers of civil service police officers from other civil service departments, the BPD has chosen not to accept transfers.

[9]General Laws c. 31, § 7, provides: "promotional appointments in such police and fire forces of cities and towns as are within the official service shall be made pursuant to section fifty-nine or section sixty-five." Section 65 relates to the Massachusetts Bay Transportation Authority police, and thus is not relevant here.

[10]This argument does not apply to Joao Monteiro, who is employed by the Boston housing police department, not the BMPD.

[11]While the duties of the two forces are "comparable in many respects,"

The record in this case demonstrates that the BMPD and the BPD are two distinct forces. The judge correctly determined that since the plaintiffs were not within the BPD, they could not have been promoted pursuant to G. L. c. 31, § 59.[12]

*Judgment affirmed.*

---

they are nevertheless two distinct forces, with different hiring processes, job responsibilities, salary scales, and benefits. For example, BMPD officers have limited jurisdiction and can patrol only certain properties, and do not have policing powers afforded to BPD under G. L. c. 90. The manner by which BMPD officers historically have been hired has differed from the manner in which BPD officers have been hired. BPD's investigation unit screens eligible candidates for appointment to the BPD, but does not screen candidates seeking to be hired by the BMPD. BMPD officers historically have been selected by the city's property management division, not the BPD. The salaries paid to BPD officers are higher than the salaries paid to BMPD officers, and BMPD officers do not receive "Quinn Bill" benefits (additional pay based on educational credit, G. L. c. 41, § 108L,) or G. L. c. 41, § 111F (disability benefits), which BPD officers currently receive.

[12]We do not reach the constitutional issue raised by the plaintiffs because it is not necessary to the outcome of this case. *Commonwealth* v. *Paasche*, 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached"). The plaintiffs' complaint also includes counts for violation of G. L. c. 31; violation of G. L. c. 151B; breach of contract; and promissory estoppel. None of these claims have been briefed on appeal; therefore, they are deemed waived. Mass.R.A.P. 16(a), as amended, 428 Mass. 1603 (1999).