NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-479                                            Appeals Court


   TRUSTEES OF BOSTON COLLEGE  vs.  BOSTON ACADEMY OF THE SACRED
             HEART, INC. (and a consolidated case[1]).


                          No. 22-P-479.

       Suffolk.     February 14, 2023. - August 10, 2023.

             Present:  Vuono, Sullivan, & Singh, JJ.


Deed, Construction.  Real Property, Deed, Easement.  Easement.
    Judicial Estoppel.  Estoppel.  Way, Private.  Practice,
    Civil, Summary judgment.


     Civil actions commenced in the Land Court Department on
June 29, 2016, and in the Superior Court Department on August 4,
2016.

     After consolidation in the Land Court, motions for summary
judgment were heard by Howard P. Speicher, J., sitting by
designation; the remaining claim was heard by him; and entry of
final judgment was ordered by him.


     Sander A. Rikleen (Daniel S. Guenther also present) for the
defendant.
     Richard A. Oetheimer (Edwina Clarke also present) for the
plaintiff.

---

     [1] The consolidated case involves the same parties.

VUONO, J.  This case involves a dispute over property rights in a private paved road known as Colby Street or Colby Road (Colby Street or way), which marks the boundary between the campuses of two prominent Catholic institutions, Boston College (BC) and Boston Academy of the Sacred Heart, Inc. (Boston Academy), better known as the Newton Country Day School (NCDS).[2] The schools acquired their adjoining campuses from a common grantor, Newton College of the Sacred Heart (Newton College), at a joint closing in 1974.  Years later, following a dispute regarding NCDS's use of Colby Street to access a new athletic center, BC commenced an action in the Land Court seeking, among other things, a declaratory judgment that it has all right, title, and interest in Colby Street and NCDS has none.  NCDS asserted several affirmative defenses and counterclaims primarily contending that it was entitled to a declaratory judgment that it owns Colby Street to its center line pursuant to the derelict fee statute, G. L. c. 183, § 58.  As we discuss in more detail later, the basis for this assertion is that although the deeds conveying land to NCDS and BC were recorded at the Middlesex South registry of deeds (registry) on the same day within the same minute, the NCDS deed was recorded first.

---

[2] To avoid confusion, the parties and the Land Court judge referred to NCDS as the defendant and the owner of the land on which its campus is located.  We do the same.

Alternatively, NCDS claimed that it had acquired an easement to use the way based on three different theories: prescription, estoppel, and implication. In addition, NCDS brought an action in the Superior Court, asserting that BC was liable for breach of the covenants in the warranty deed it had received from Newton College.[3]

Ultimately, on cross motions for summary judgment, a judge of the Land Court rejected NCDS's arguments and granted summary judgment for BC. He concluded that under the simultaneous deeds doctrine, the order in which the deeds were recorded was inconsequential. He then concluded that based on the plain language of the deed to BC, it was clear that BC owns all rights, title, and interest in Colby Street, and NCDS had no rights to use Colby Street absent permission from BC. The judge also ruled in favor of BC on NCDS's claim for breach of deed warranties. At a jury-waived trial on NCDS's counterclaim that it held a prescriptive easement to use Colby Street, the judge determined that NCDS had not met its burden of establishing a prescriptive easement and entered judgement for BC.[4] That

---

[3] The cases were consolidated, and the Land Court judge assigned to the BC action was appointed to sit as a judge of the Superior Court for the purposes of this case. See G. L. c. 211B, § 9 (x).

[4] The judge found that the paved portion of Colby Street has been left open to the public since 1974, and therefore any use of the road by NCDS was not adverse. In addition, the judge

judgment is not contested on appeal.  At the conclusion of the trial, judgment entered on BC's remaining claims for trespass and nuisance.  NCDS's appeals from this judgment focusing its arguments on the order allowing BC's motion for summary judgment.  We affirm.

Background.  We summarize the undisputed facts from the summary judgment record as follows.  BC is a charitable corporation that operates a nonprofit educational institution. It owns a parcel of land in the city of Newton, known as the Newton Campus, fronting Centre Street where it maintains its law school, freshman dormitories, student athletic fields, and other facilities.  Boston Academy, a religious and charitable corporation, owns an adjacent parcel of land on Centre Street, which abuts the northern boundary of BC's Newton Campus, where it operates the NCDS for girls from grade five through grade twelve.  Newton College owned all the property comprising the two campuses prior to June 28, 1974.  At that time, as a result

---

found that despite some parking by NCDS students on a "random but not regular basis," that use was with BC's permission.  In fact, NCDS students often received tickets for parking on the shoulder of the road.  Furthermore, BC had "maintained its dominion and control over the whole of Colby Street" by servicing and repairing it.  The judge also found that any other uses by NCDS of Colby Street, such as using openings in the chain-link fence to enter the NCDS campus, were intermittent and also by permission of BC.  Accordingly, the judge concluded that NCDS did not establish, and is not entitled to, an easement by prescription for parking, for access to or from its campus, or for travel on any part of Colby Street.

of financial difficulties, Newton College had decided to close and to transfer its assets and land separately to BC and NCDS.[5] It filed a petition for dissolution pursuant to G. L. c. 180, § 11A, and was granted a decree from the Supreme Judicial Court to liquidate all its assets, sell its property, and dissolve. See Newton College of the Sacred Heart vs. Attorney General, Supreme Judicial Court, No. 74-114 (Suffolk County Aug. 20, 1976) (equity action).

The transfer of land occurred at a joint closing on June 28, 1974, in accordance with an interlocutory decree of the Supreme Judicial Court issued in connection with the equity action. All parties were present and represented by experienced legal counsel. Newton College executed and delivered two deeds that divided its property into two parcels. A quitclaim deed to BC conveyed the southern portion of the land (southern parcel) and a warranty deed to NCDS conveyed the northern portion (northern parcel).[6] Colby Street is a private way that separates

---

[5] Newton College's financial problems began a few years earlier, and in 1972, to shore up its finances, Boston Academy's predecessor entity (which had operated NCDS for decades and was also known as Boston Academy of the Sacred Heart) was dissolved by a decree of the Supreme Judicial Court and ordered to transfer all of its assets, including the land comprising the NCDS campus, to Newton College. Newton College then operated NCDS until 1974, when its financial difficulties became insurmountable, prompting its dissolution as described above. Once Newton College closed, a newly formed Boston Academy (the defendant in this case) resumed operating NCDS.

the two parcels and runs along the entire southern boundary of NCDS's parcel, and along the entire northern boundary of BC's parcel. As relevant here, the BC deed describes the northern boundary as "running along the northerly side of Colby Street." On its face, this language included the entire paved area and right of way comprising Colby Street. NCDS does not argue otherwise. The BC deed also stated that the parcel was conveyed together "with all of the Grantor's [Newton College's] right, title, and interest, if any, in . . . Colby Street." The NCDS deed contains no such language. The southern boundary in the NCDS deed is described as "running along the northerly side of said Colby Street." On its face, this conveyance placed NCDS's southern boundary on the northern edge of Colby Street, with the entirety of the Colby Street pavement and right of way on property conveyed to Boston College.

The two deeds were presented for recording at the registry on the same day and both were recorded at 3:52 P̲.M̲. However, at least based on the book and page numbers assigned by the

---

[6] More specifically, the property conveyed to BC is shown as parcels A1 (on a plan entitled "Plan of Land in Newton Mass." dated March 4, 1965, prepared by J.F. Hennessey, C.E., which is recorded in the registry as plan 1146 of 1965 in book 10929, page 407 [1965 plan]), and A2 (on a plan entitled "Plan of Land in Newton, Mass." by J.F. Hennessey, recorded "in Book 11235, End Page"). The property conveyed to NCDS is shown as parcels B1 and B2 on the 1965 plan. Both parcels are described by metes and bounds.

registry, the NCDS deed was recorded first.[7]  While both deeds were referenced in the index of the closing binder, which was prepared by experienced counsel, there was no indication that the deeds were to be recorded in any particular order.

Colby Street has continued to exist as a private way and functions as the boundary line between the two campuses.  The street is paved and is separated from the NCDS campus by an eight to ten-foot-wide grassy strip of land and a chain-link fence that runs along the property line for the length of the street (approximately 1,000 feet) with three gates.

For nearly fifty years, BC and NCDS had a collegial and cooperative relationship regarding the use of Colby Street.  This cordial relationship became strained when, in 2013, NCDS developed plans to construct a new athletic facility and sought to provide vehicular access to the facility from Colby Street via a new driveway.  After BC objected, NCDS revised its plan so that the new driveway to Colby Street would be used only for emergency access.  According to BC, when the athletic center opened in 2016, NCDS did not restrict use of the new driveway

---

[7] NCDS's deed is recorded at book 12658, page 286.  BC's deed is recorded at book 12658, page 294.  The only intervening document concerned BC's agreement to assume certain recorded liabilities of Newton College as part of the sale transaction.

solely to emergency access.  The dispute became acrimonious, and despite attempts for a resolution, both parties filed lawsuits.[8]

As previously noted, the parties cross-moved for summary judgment.  Following a hearing, in a comprehensive memorandum of decision, the judge concluded that the two deeds were recorded as part of a single transaction and, applying the simultaneous deeds doctrine, viewed them as having been recorded together. He then determined that the deeds unambiguously gave BC full fee interest in Colby Street.  The judge also concluded that NCDS did not raise a triable issue with respect to its claims that it had an easement by estoppel or implication, and that BC was not liable for any breach of deed covenants.

---

[8] BC filed a five-count complaint in the Land Court on June 29, 2016, seeking to reform the deeds to the parties by reversing the order they were recorded to reflect the intent of the parties (count one) and a judgment declaring that BC has all right, title, and interest in the disputed way and NCDS has none (count two).  The remaining counts alleged a try-title claim under G. L. c. 240, §§ 1-5 (count three), a trespass claim (count four), and a nuisance claim (count five).  Count one was dismissed as moot given the judge's ruling that the deeds were recorded simultaneously.  NCDS filed its answer and three counterclaims on August 4, 2016.  The counterclaims sought a judgment declaring that it has rights to Colby Street pursuant to G. L. c. 183, § 58, the derelict fee statute (counterclaim one), and on a theory of easement by prescription (counterclaim two).  Counterclaim three alleged a breach of warranty of deed covenants.  The breach of warranty covenants claim was also filed in the Superior Court, which, as noted, transferred that claim to the Land Court.  Also as noted above, NCDS asserted, as affirmative defenses, that the doctrines of easement by estoppel or easement by implication grant it rights in the use of Colby Street.

Discussion. "We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, 'all material facts have been established and the moving party is entitled to judgment as a matter of law'" (citation omitted). Assad v. Sea Lavender, LLC, 95 Mass. App. Ct. 689, 693 (2019). Where the parties have filed cross motions for summary judgment, "the evidence is viewed in the light most favorable to the party against whom judgment is to enter" (quotation and citation omitted). Winbrook Communication Servs., Inc. v. United States Liab. Ins. Co., 89 Mass. App. Ct. 550, 553 (2016).

1. Effect of the recording of the deeds. NCDS acknowledges that its deed did not specifically include rights in Colby Street. Nonetheless, NCDS argues, as it did in the Land Court, that because its deed was recorded first, at a time when Newton College owned all the land, and the deed did not contain any express exception or reservation of rights to use Colby Street, then, by operation of the derelict fee statute, G. L. c. 183, § 58, it has title to Colby Street from the southern boundary of its property to the center line of Colby Street. Consequently, NCDS claims that it has the right to use the entirety of Colby Street for all purposes.[9]

---

[9] The derelict fee statute, G. L. c. 183, § 58, provides in pertinent part as follows:

NCDS's argument founders if, as BC maintains and the judge concluded, the deeds were executed and recorded simultaneously with no intent that they be recorded in any particular order. If this is so, then the NCDS deed should not be given any priority over the deed to BC. Put another way, if the deeds were recorded simultaneously, the derelict fee statute does not apply, because Newton College did not retain any interest in Colby Street at the time of the conveyance. Thus, according to the parties (and the judge), the relevant inquiry is whether the record on summary judgment contains any admissible evidence indicating that the parties intended to record the NCDS deed first. NCDS claims such evidence exists and, therefore, the entry of summary judgment in favor of BC based on an application of the simultaneous deeds doctrine was improper. BC takes the opposite view.[10]

---

"Every instrument passing title to real estate abutting a way, whether public or private, . . . shall be construed to include any fee interest of the grantor in such way . . . unless (a) the grantor retains other real estate abutting such way, . . . in which case . . . if the retained real estate is on the other side of such way, . . . the title conveyed shall be to the center line of such way, . . . as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

[10] Because NCDS would bear the burden at trial of establishing its claimed rights, to be entitled to summary judgment, BC must establish that NCDS had "no reasonable expectation of proving an essential element of [its] case"

Before we address the application of the simultaneous deeds doctrine, we note that the order in which the deeds were recorded is immaterial for a different reason not addressed by the parties or the judge.[11] The deeds at issue were delivered at the closing and became effective at that time. It is well settled that the recording of a deed is not a requirement to pass title. "A real estate deed is effective on delivery to the grantee and enforceable as between the parties to that instrument regardless of whether it has been recorded." Gomes v. Harrison, 97 Mass. App. Ct. 745, 751 (2020). The recording of the deed serves to provide notice to others who have no knowledge of the transaction. See Aronian v. Asadoorian, 315 Mass. 274, 276 (1943), citing Earle v. Fiske, 103 Mass. 491 (1870) ("The recording statute, G. L. (Ter. Ed.) c. 183, § 4, does not affect the validity upon delivery of an unrecorded deed

_____

(citation omitted). Wolsfelt v. Gloucester Times, 98 Mass. App. Ct. 321, 324 (2020).

[11] Although BC makes this argument in its brief on appeal, it apparently did not do so in its motion for summary judgment. However, we may affirm summary judgment on any ground apparent in the record. See Kewley v. Department of Elementary & Secondary Educ., 86 Mass. App. Ct. 154, 158 (2014) (in our review of motion for summary judgment, "[w]e may consider all grounds visible in the record and supportive of affirmance, even though the parties and motion judge may not have relied upon them"). See also New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 419 Mass 658, 662 n.5 (1995) (applying distinction that appellee may raise new argument not raised below; appellant may not).

as between the parties to it or as to persons with notice").

Here, there is no question that NCDS, a party to the joint closing, was aware that the deeds were delivered and that title to two separate parcels had passed to it and to BC respectively. In fact, the parties' joint statement of agreed facts states that the transfer of property was completed at the closing on June 28, 1974. More importantly, because the deeds at issue were prepared prior to the closing and were included in the closing binder, NCDS was aware that the BC deed stated that Newton college conveyed "all of [its] right, title, and interest, if any, in . . . Colby Street" and its deed contained no similar recitation. Given that NCDS was fully aware that ownership of Colby Street had been transferred to BC before the deeds were brought to the registry to be recorded, its argument that it owns the fee to the center line of Colby Street on the ground that its deed was recorded first does not withstand scrutiny.

The conclusion we reach is dispositive, but given the manner in which this case was decided and briefed, we address the grounds on which the parties rely to support their respective positions. We therefore turn our discussion to a review of the simultaneous deeds doctrine. Relying on a number of cases from the last century, the Land Court judge explained the doctrine as follows:

"'[W]hen two or more deeds, conveyances, or contracts of any sort are made simultaneously, and so connected with each other that they may be regarded as one transaction, these contracts and conveyances shall be held to take effect in such order of priority and succession as shall best carry into effect the intention and best secure the rights of all the respective parties.' Pomeroy v. Latting, 81 Mass. 435, 436 (1860). Accordingly, '[w]hen the instruments come to be executed, delivered, and recorded at the same time[], there is no supremacy afforded the grant in the one of the sequential instruments which first makes it to record . . . when deeds are presented at the same time to the Registry, the order in which deeds go to record does not determine property rights definitively.' Jean v. Perez, 25 [Land Ct. Rep.] 176, 183 (2017) (Piper, J.). When deeds are recorded on the same day, 'there is nothing in the terms of either which makes it subject to the other; and prima facie they [are] in fact simultaneous[.]' Chase v. Woodbury, 60 Mass. 143, 147 (1850). Further, where two deeds from a single grantor to different grantees are simultaneous, the case is 'much more like a partition between tenants in common, where each party takes his estate with the rights, privileges, and incidents inherently attached to it, than [it is] like the case of grantor and grantee, where the grantor conveys a part of his land, by metes and bounds, and retains another part to his own use[.]' Johnson v. Jordan, 43 Mass. 234, 241 (1841). Supremacy will not be afforded the grant in one of a series of sequential instruments merely because it is first-in-time, 'at least in the absence of some evidence of a contrary intention.' Jean v. Perez, [supra] at 183."[12]

The doctrine thus holds that where deeds are executed, delivered, and recorded at the same time as part of a single integrated transaction, the deeds are deemed to be recorded simultaneously and one deed is not given priority over the other. More recently, we applied the doctrine in Haugh v.

---

[12] Contrary to NCDS's assertion, there is nothing improper about relying on these cases despite their remoteness in time where, as here, the law remains unchanged. See Haugh v. Simms, 64 Mass. App. Ct. 781, 787 (2005).

Simms, 64 Mass. App. Ct. 781, 787 (2005), a case involving a dispute over an easement to lay utilities on a private road. There, we concluded that two deeds recorded on the same day three minutes apart should be considered as filed contemporaneously, and therefore the execution of the deeds, which occurred three days apart, were appropriately characterized as a single transaction. Id. In reaching our conclusion in that case, we also considered the circumstances surrounding the purchase of the property at issue and the brief time between the execution of the deeds. Id.

Accordingly, we consider the undisputed facts to determine whether the conveyance and recording of the two deeds were part of a single simultaneous transaction such that the doctrine applies and, therefore, the order in which the deeds were recorded has no significance. The deeds were executed at a joint closing where all parties and their lawyers were present. It is clear that the deeds were prepared before the closing and were included in the closing binder. As previously noted, the closing binder contains no instruction or memorandum that indicates one deed should be recorded before the other or that the order of recording was important to accomplish the intent of the parties.[13] Following the closing, the two deeds were

---

[13] As the judge noted, "[i]t is inconceivable that if the order of recording were crucial to the transaction in any way,

recorded at the registry on the same day within the same minute. Although our review is de novo, these undisputed facts, coupled with the plain language of the deed conveying the way to BC and the absence of any explanation why the fee in the way was not directly conveyed to NCDS, lead us to the same conclusion as the Land Court judge. That is, based on these undisputed facts, the conveyance and recording of the two deeds were part of a single simultaneous transaction and, as a result, the order in which the deeds were recorded has no significance.

Finally, NCDS argues that in determining whether the doctrine of simultaneous deeds applies, the judge should have considered "evidence of external circumstances" and further asserts that here the attendant circumstances (undisputedly) demonstrate an intent to give its deed priority. Although we agree that the circumstances surrounding the recording of two or more deeds are relevant to determining whether the doctrine applies, and BC does not argue otherwise, none of the proffered evidence on which NCDS relies in support of its position creates a triable issue of fact.

NCDS first points to the close relationship between Newton College and NCDS and argues that "it defies logic" that Newton

---

attorneys from Ropes & Gray and Goodwin, Procter & Hoar would not have executed such a document [dictating the order of recording] and included it in the closing binder."

College intended to terminate NCDS's right to use Colby Street. It is true that Newton College and Boston Academy (and NCDS) were "sister entities," and they both trace their origins to the Roman Catholic community known as the Religious of the Sacred Heart. While this connection is important to both institutions, it is entirely speculative to conclude from their close relationship an intent to grant NCDS an interest in Colby Street. See Cesso v. Todd, 92 Mass. App. Ct. 131, 139 (2017) (inference in favor of nonmoving party cannot be based on "speculation and conjecture" [citation omitted]).

Next, NCDS relies on evidence of a vote of the Newton College board of trustees taken on May 10, 1974, shortly before the June 28, 1974, joint closing. Among other things, the vote authorized the filing of a petition for dissolution, the reconveyance of real estate and other related assets acquired by Newton College from Boston Academy in 1972 (see note 5, supra), and the conveyance of "substantially all the remaining assets" of Newton College to BC (subject to BC's assumption of substantially all of Newton College's liabilities). NCDS claims that the vote, and in particular the directive that "remaining assets" be transferred to BC, constitutes admissible evidence of Newton College's intent that its deed be recorded first. This argument is not persuasive for a number of reasons, the first being that nothing in the vote specifies that NCDS is to receive

an interest in Colby Street.  Second, there was a subsequent and final vote regarding dissolution and the transfer of assets taken on June 19, 1974, using the same language but authorizing distribution of assets to BC first, with the "remainder" distributed to NCDS.  Lastly, as the judge observed, NCDS's reliance on the May 10 vote, purporting to convey to NCDS the "same land," including the fee in the way, previously transferred to Newton College, is inconsistent with its argument that it owns Colby Street only to the center line.

NCDS also relies on the interlocutory decree issued by the Supreme Judicial Court a day before the joint closing on June 27, 1974.  The interlocutory decree authorized Newton College "to close its affairs and dissolve" subject to filing of an affidavit of compliance that it had transferred certain assets and "two parcels of real estate" to NCDS and delivered its "remaining assets" to BC.  This argument also is unavailing for a simple reason:  nothing in the decree requires that the NCDS deed be recorded first.  More importantly, even if we were to conclude otherwise, the "two parcels" of land to be conveyed to NCDS do not include any ownership in Colby Street.  The two parcels are described in NCDS's amended petition for dissolution and are identical to the description contained in the NCDS deed.

Next, NCDS points to a letter written by an attorney for Boston College in 1988 in connection with a subdivision proposal

in which the attorney states that NCDS "already has rights of access in Colby Street." According to NCDS, the letter demonstrates Newton College's intent to convey a portion of Colby Street fourteen years earlier. NCDS further argues that, based on the statement, BC is judicially estopped from claiming that NCDS has no ownership interest in Colby Street.

We are not persuaded by this argument. To begin with, we are not aware of any case in Massachusetts that directly applies the doctrine of judicial estoppel to positions adopted in administrative proceedings, although we note that other jurisdictions have done so. See, e.g., Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 604 (9th Cir. 1996). To the extent that NCDS is requesting that we expand the applicability of the doctrine to administrative proceedings, it has not provided us with any substantive argument in support of that request as required by Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). Accordingly, the argument is waived. See Goncalves v. Boston, 66 Mass. App. Ct. 180, 186 n.12 (2006) (claims not adequately briefed on appeal are deemed waived). In any event, even if we were to assume that the doctrine of judicial estoppel may be invoked in these circumstances, the argument is unavailing, if for no other reason than that no court (or agency) was persuaded to accept such a position. See Massachusetts Highway Dep't v. Perini

Corp., 83 Mass. App. Ct. 96, 106 (2013), citing Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640-641 (2005) ("Judicial estoppel is comprised of two fundamental elements: [1] the position being asserted must be directly inconsistent with that taken in a prior proceeding, and [2] the party must have persuaded the court in the earlier proceeding to accept its prior position"). Where, as here, the subdivision never came to fruition, we are hard pressed to accept the attorney's statement in regard to the subdivision as binding. Lastly, the 1988 statement sheds no light on what the parties intended in 1974.

NCDS's final argument is that two affidavits submitted by two attorneys, Edward Rainen and G. Michael Peirce, were properly considered by the judge and provide further evidence of Newton College's intent that NCDS's deed be recorded first. BC moved to strike the affidavits, and the judge did not rule on BC's motion. Although we do not know to what extent, if any, the judge considered the affidavits in reaching his conclusion, they provide little, if any, relevant evidence of Newton College's intent. The two affiants were not present at the closing or involved in the 1974 transactions but, instead, provided their expert opinions upon review of the same materials that were part of the record on summary judgment. Neither affidavit constitutes admissible evidence establishing that, at

the time of the 1974 transaction, Newton College expressed or documented its intent that NCDS's deed be recorded first.

In sum, the record is devoid of any admissible, nonspeculative evidence that supports NCDS's claim regarding an intent to record its deed first other than the fact that its deed was recorded on an earlier page at the registry.  This sole fact is insufficient to defeat summary judgment in the absence of any evidence demonstrating that the order in which the deeds were recorded was anything but happenstance.  Haugh, 64 Mass. App. Ct. at 787 ("Nor should the case rest on which deed the [grantee] happened to hand the clerk at the registry of deeds first on the day of recording").

Having concluded that the deeds were recorded simultaneously as part of a single integrated transaction, and that there is no admissible evidence to suggest otherwise, we look to the language of the deeds to determine the intent of the grantor, Newton College.  If that language is unambiguous, we look no further.  See Sheftel v. Lebel, 44 Mass. App. Ct. 175, 179 (1998) ("The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances" {emphasis added]).  See also White v. Hartigan, 464 Mass. 400, 410-411 (2013).

Here, there is no ambiguity in the relevant language of the deeds. That language, which is undisputed, describes the parcels to be conveyed to BC and NCDS by reference to the 1965 plan. The plan graphically depicts the boundary line between the parcels and states "proposed property line" along the north side of Colby Street. The BC deed describes its boundary as the northern edge of Colby Street, and not as the center line. The NCDS deed describes its southern boundary as "running along the northerly side of said Colby Street." In addition, the BC deed explicitly states that the grantor's intent is to convey all its interest in Colby Street (and other ways) to BC ("Said premises are conveyed with all of the Grantor's right, title and interest, if any, in . . . Colby Street . . . as shown on [two plans, including the 1965 plan]"). The deed to NCDS contains no such grant.

Given the plain language of the deeds, there is no basis for considering extrinsic evidence to determine Newton College's intent. NCDS claims that the same evidence it alleges supports its position that the parties intended to record its deed first should be considered to interpret the language of the deed. The judge correctly did not consider the proffered evidence in this regard, and neither do we.

2. Easement by estoppel. NCDS asserts alternatively that, even if it does not have a fee interest in the way, it is

entitled to a declaration that it has an easement by estoppel over Colby Street.[14]  The judge rejected this claim and so do we. An easement by estoppel may be created in two ways.  See Blue View Constr., Inc. v. Franklin, 70 Mass. App. Ct. 345, 355 (2007).  "First, when a grantor conveys land bounded by a street or way, he, and those claiming under him, are estopped to deny the existence of the street or way, and his grantee acquires rights in the entire length of the street or way as then laid out or clearly prescribed."  Id.  "Second, when a grantor conveys land situated on a street in accordance with a recorded plan that shows the street, the grantor, and those claiming under him, are estopped to deny the existence of the street for the distance as shown on the plan."  Id.  NCDS argues that the first of these circumstances applies to the facts presented here.

This argument has no merit for the reasons we have already discussed.  Newton College, the grantor, had not retained any rights in the land abutting the parcel conveyed to NCDS.  An easement by estoppel can arise only if the grantor retains land

_____

[14] We note that although NCDS asserted this claim and its claim for an implied easement as affirmative defenses, the judge treated both as counterclaims.  See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974) (permitting court to consider affirmative defense, if justice so requires, as counterclaim). Nothing turns on whether these two claims are treated as affirmative defenses or as counterclaims.

adjacent to the way at issue. Blue View Constr., Inc., 70 Mass. App. Ct. at 355. As the Land Court judge observed, "the essence of the doctrine of easement by estoppel is that a grantor of land, 'describing the same by a boundary on a street or way, if he be the owner of such adjacent land, is estopped from setting up any claim, or doing any acts, inconsistent with the grantee's use of the street or way[.]' Hennessey v. Old Colony & Newport R.R. Co., 101 Mass. 540, 541 (1869) (emphasis added)." Given our conclusion that the undisputed facts establish that Newton College conveyed all of its land simultaneously to Boston College and to NCDS, Newton College did not have any rights in Colby Street at the time of the conveyance to NCDS. Consequently, the conveyance to NCDS did not give rise to an easement by estoppel over Colby Street.

3. Implied easement. NCDS's argument that it has an implied easement over Colby Street fares no better. Easements by implication are "created when land under single ownership is severed and the easement is reasonably necessary for the enjoyment of one of the parcels." Post v. McHugh, 76 Mass. App. Ct. 200, 205 (2010), quoting Silverlieb v. Hebshie, 33 Mass. App. Ct. 911, 912-913 (1992). Whether an easement by implication exists is a matter of the presumed intent of the parties, which is "to be gathered from the language of the instruments when read in the light of the circumstances

attending their execution" (citation omitted).  Boudreau v.
Coleman, 29 Mass. App. Ct. 621, 629 (1990).  The party asserting
the existence of an easement by implication has "the burden of
proving its existence."  Id.

In order to prevail on such a claim, a party must first
offer some evidence that the claimed easement was reasonably
necessary to the use of its property at the time of the
conveyance.  A party seeking to establish an easement by
implication need not show strict necessity for the easement, but
more than mere convenience of its use is required.  See Lavoie
v. McRae, 102 Mass. App. Ct. 14, 20-21 (2022).[15]

Here, nothing in the record suggests a factual dispute
whether the use of Colby Street by NCDS was reasonably necessary
for the enjoyment of the property transferred to it by Newton
College.  To the contrary, it is undisputed that NCDS's property

_____

[15] Compare, e.g., Cummings v. Franco, 335 Mass. 639, 642-644
(1957) (easements for lights, maintenance of electric fixtures,
electricity supply, and water supply held to be reasonably
necessary easements), and Flax v. Smith, 20 Mass. App. Ct. 149,
152-154 (1985) (easement by implication existed where homes had
used water and sewer line easement for decades and such use was
held reasonably necessary), with Joyce v. Devaney, 322 Mass.
544, 549 (1948) (no easement by implication over driveway even
when it provided the only practical entrance to plaintiff's
garage, because parties' contrary intentions were shown by
inclusion of unrelated express easements in deed), and Boudreau,
29 Mass. App. Ct. at 630 (no easement by implication where there
was "no evidence that at the crucial time . . . (or, indeed, at
any other time) the locus was landlocked without use of the ways
proposed").

has sufficient frontage on other roads with points of access including its main entrance to the campus located on Centre Street.[16]  Nor is there any evidence that suggests that NCDS's property would severely diminish in value if it were to lose access via Colby Street.  See Lavoie, 102 Mass. App. Ct. at 25 (noting that diminution in value of property can be used to satisfy initial burden of showing reasonable necessity).

Nor does the record evidence permit an inference that Newton College intended to, or did, grant NCDS an easement in Colby Street by implication.  As previously discussed, both deeds referred to the 1965 plan, which explicitly depicted and described the boundary between the two parcels as the northern edge of Colby Street.  Again, the deed to Boston College clearly and explicitly granted all of Newton College's "right, title and interest" in Colby Street to BC, whereas the simultaneously executed deed to NCDS evinced no such intent.

---

[16] As conveyed to NCDS, lot B1 has, in addition to the main entrance to and exit from the NCDS campus along its 800.87 feet of frontage on Centre Street (a public way), 998.32 feet of frontage on Richmond Road (a private way), and 532.02 feet of frontage on Westchester Road (a private way), for a total of 2,331.21 feet of frontage on public and private ways other than Colby Street.  There is also access to the NCDS campus via Academy Road, another private way.  There is no suggestion that this extensive frontage was not usable and adequate for access to the NCDS campus.

In an effort to defeat summary judgment, NCDS submitted affidavits from Sister Barbara Rogers, the current headmistress of NCDS; Sister Fran de la Chappelle, the dean of students at Newton College at the time of its dissolution; and Sister Kathleen Hughes, the treasurer of the former Boston Academy of the Sacred Heart.  The affiants recount their conversations with Sister Elizabeth Sweeney, who was clerk of Newton College in 1974.  They aver that Sweeney reported to them in later years that one of the primary purposes of the 1974 "transaction" (namely, the dissolution of Newton College) was to assure that NCDS would once again be able to operate as an independent school with its own campus as it had during previous years under the former iteration of Boston Academy.  Even if we were to assume that these statements would be admissible at trial, they shed no light on the question whether there was an intent to create an implied easement over Colby Street.  Indeed, none of the affiants assert that Sweeney discussed the right to use Colby Street with them.

Similarly, the affiants' statements that they observed guests of NCDS and busses visiting NCDS regularly park along Colby Street before, up to, and for some period after the time of the 1974 conveyances do not support an inference that Newton College intended to grant an easement because such use was reasonably necessary for the use of the NCDS campus.  All three

affiants averred that they knew of no limitations on NCDS's use of Colby Street.  However, in the absence of any evidence that use of Colby Street for parking or access was necessary for the operation of the campus, evidence of the use of Colby Street for parking, without more, is merely evidence that it was convenient.  It is not evidence that would support an inference that it was necessary for the reasonable use of the NCDS campus or that Newton College intended to grant an easement for such use.  See Krinsky v. Hoffman, 326 Mass. 683, 688-689 (1951).

In sum, because NCDS did not raise any triable issue that there was an intention to create an easement by implication over Colby Street, summary judgment was properly entered in favor of BC on this claim as a matter of law.

4.  Breach of warranty deed covenants.  NCDS claims that the lawsuit brought by BC triggers the warranty obligations contained within its deed from Newton College and that because BC assumed Newton College's liabilities, BC is the successor to those warranty obligations.  As a result, NCDS argues, BC should have defended NCDS's alleged interest in Colby Street.  The judge granted summary judgment in favor of BC on this claim, reasoning that because "NCDS was not conveyed any interest in Colby Street, nor is there any evidence of any intent to convey such an interest, by grant, by estoppel, by implication, or by virtue of the rule of construction imposed as a matter of law by

the derelict fee statute, there is accordingly no breach of the warranties in the NCDS deed."  In other words, assuming without deciding that BC assumed the warranty obligations by virtue of having assumed Newton's liabilities, no deed warranty obligations to NCDS were triggered because BC's lawsuit concerned land (Colby Street) owned by BC and not NCDS. Accordingly, summary judgment was properly entered in favor of BC on this claim.

5.  <u>Nuisance and trespass</u>.  As previously noted, after trial on NCDS's prescriptive easement counterclaim, judgment entered in favor of BC on its claims for nuisance and trespass. BC's complaint sought an order enjoining NCDS from using Colby Street, which was granted, and requested monetary damages, but none were awarded.  NCDS now asserts that BC's claims for nuisance and trespass should be dismissed as moot, claiming that, should we accept its argument that it owns to the center line of Colby Street, then BC cannot make out a claim for nuisance or trespass because NCDS has a right to use the property.  In light of the fact that we have rejected that argument, so much of the judgment as concerned BC's claims of nuisance and trespass was correctly entered.

<u>Judgment affirmed</u>.